IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OPENLANDS, an Illinois not-for-profit )
corporation; and SIERRA CLUB, a )
California non-for-profit corporation, )
                                    )
          Plaintiffs, )
                                    )
v. )   CASE NO. 1:14-cv-3912
                                    )
ILLINOIS DEPARTMENT OF )   Judge Marvin E. Aspen
TRANSPORTATION, an Illinois State )
agency; ANN L. SCHNEIDER, in her )
official capacity as Secretary of the Illinois )
Department of Transportation; BOARD OF )
THE CHICAGO METROPOLITAN )
AGENCY FOR PLANNING, an Illinois )
municipal corporation; and MPO POLICY )
COMMITTEE, an Illinois public agency, )
                                    )
          Defendants. )

## ANSWER

Come now Defendants Illinois Department of Transportation ("IDOT") and Ann L. Schneider ("Schneider") (hereinafter referred to collectively as "Defendants"), by counsel, and for their Answer to Plaintiffs' Verified Amended Complaint for Declaratory and Injunctive Relief ("Complaint"), state:

## INTRODUCTION

The unnumbered introductory paragraphs of the Complaint contain conclusions of law and characterizations of Plaintiffs' claims, to which no responsive pleading is required. In response to the factual averments in the unnumbered introductory paragraphs, Defendants incorporate their responses to these same factual averments in the numbered paragraphs below.

To the extent that the introductory paragraphs contain factual averments not answered in the numbered paragraphs below, Defendants deny those averments.

## LEGAL BASIS

1. This Complaint is brought pursuant to 735 ILCS 5/2-701 and this Court's equitable jurisdiction and requests that this Court declare: (1) the Defendant MPO Policy Committee's October 17, 2013 votes to approve the proposed Illiana Tollway without the required "prior" approval of the Defendant CMAP Board were unauthorized, in violation of the Illinois Regional Planning Act, 70 ILCS 1707/60(c), and without legal effect; and (2) Defendants IDOT and Ann L. Schneider, in her official capacity as Secretary of IDOT, are not legally authorized to spend public funds and otherwise further proceed with the proposed Illiana Tollway, and grant an injunction and enjoin Defendants IDOT and Ann L. Schneider, in her official capacity as Secretary of IDOT, from spending public funds and otherwise taking any actions to develop the proposed Illiana Tollway.

 __ANSWER:__ The averments in Paragraph 1 of the Complaint are characterizations of the Complaint and the relief sought by Plaintiffs, to which no responsive pleading is required.

2. This action also is brought pursuant to 735 ILCS 5/11-301 *et seq.* to enjoin the unlawful expenditures and disbursement of public funds by Ann L. Schneider, in her official capacity as the Secretary of IDOT, with regard to Defendant IDOT's unauthorized continued development of the proposed Illiana Tollway.

 __ANSWER:__ The averments in Paragraph 2 of the Complaint are characterizations of the Complaint and the relief sought by Plaintiffs, to which no responsive pleading is required.

3. This action also is brought pursuant to common law principles allowing suits in equity by taxpayers of the State to restrain unlawful expenditures and disbursements of public funds by State officials.

 __ANSWER:__ The averments in Paragraph 3 of the Complaint are characterizations of the Complaint and the relief sought by Plaintiffs, to which no responsive pleading is required.

## PARTIES

4. Plaintiff Openlands is a not-for-profit corporation organized and existing under the laws of the State of Illinois. Openlands has approximately 3,000 members who live in Illinois. Openlands works to protect and conserve natural areas and open spaces in northeastern Illinois and the surrounding region in order to ensure cleaner air and water, protect natural habitats and wildlife, and help balance and enrich the lives of northeastern Illinois's citizens. Openlands works to support effective regional land use and transportation planning that balances the growth of the Chicago metropolitan area with the responsibility to protect open spaces and natural resources for

future generations. Openlands has participated in transportation planning processes in the Chicago metropolitan area for many years to advance its members' interests.

**ANSWER:** With respect to the averments in Paragraph 4 of the Complaint, Defendants admit that Openlands has participated in transportation planning processes in the Chicago metropolitan area. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 4, and therefore deny them.

5.     Openlands' members use and enjoy natural resources that would be adversely impacted by the Illiana Tollway. Openlands' members are also citizens and taxpayers of the State of Illinois who pay sales taxes, income taxes, motor vehicle taxes, motorist user fees and motor vehicle fuel taxes. Openlands' members are concerned that the Illiana Tollway is unneeded and financially imprudent, and will divert funds from other needed transportation projects in the Chicago region.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 5 of the Complaint, and therefore deny them.

6.     Plaintiff Sierra Club is a not-for-profit corporation organized and existing under the laws of the State of California. The Sierra Club is a national environmental organization with more than 630,000 members. More than 24,000 of these members live in Illinois. The Sierra Club has offices and programs and is doing business in the State of Illinois. The Sierra Club's purpose is to protect the natural environment and promote the responsible use of the Earth's ecosystems and resources. As part of its mission, the Sierra Club supports smart, sustainable transportation spending and works to encourage comprehensive regional planning to prevent inefficient sprawl growth. The Sierra Club has participated in transportation planning processes in the Chicago metropolitan area for many years to advance its members' interests.

**ANSWER:** With respect to the averments in Paragraph 6 of the Complaint, Defendants admit that the Sierra Club has participated in transportation planning processes in the Chicago metropolitan area. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 6, and therefore deny them.

7.     The Sierra Club's members use and enjoy natural resources that would be adversely impacted by the proposed Illiana Tollway. The Sierra Club's members are also citizens and taxpayers of the State of Illinois who pay sales taxes, income taxes, motor vehicle taxes, motorist user fees and motor vehicle fuel taxes. The Sierra Club's members are concerned that the Illiana Tollway is unneeded and financially imprudent, and will divert funds from other needed projects in the Chicago region.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 7 of the Complaint, and therefore deny them.

8. Plaintiffs Openlands and Sierra Club are also plaintiffs in a federal court lawsuit challenging the Tier 1 Environmental Impact Statement for the proposed Illiana Tollway under the National Environmental Policy Act, 42 U.S.C. §4321 *et seq.* and other federal laws. *Openlands et al. v. Federal Highway Administration et al.,* No. 1:13-cv-04950 (No. Dist. Ill.).

**ANSWER:** With respect to the averments in Paragraph 8 of the Complaint, Defendants admit that Plaintiffs Openlands and Sierra Club are also plaintiffs in *Openlands et al. v. Federal Highway Administration et al.*, No. 1:13-cv-04950 (N.D. Ill.). The pleadings in that lawsuit speak for themselves and are the best evidence of their contents.

9. Defendant Illinois Department of Transportation ("IDOT") is an agency of the State of Illinois, authorized by the Department of Transportation Law, 20 ILCS 2705/2705-1 *et seq.*

**ANSWER:** Defendants admit the averments in Paragraph 9 of the Complaint.

10. Defendant Ann L. Schneider is the Secretary of the Illinois Department of Transportation.

**ANSWER:** Defendants admit the averments in Paragraph 10 of the Complaint.

11. Defendant Board of the Chicago Metropolitan Agency for Planning ("CMAP Board") is an Illinois municipal corporation created by the Illinois Regional Planning Act, 70 ILCS 1707/1 *et seq.* The CMAP Board is the body within CMAP that is authorized to "sue and be sued in its official name." 70 ILCS 1707/35.

**ANSWER:** The averments in Paragraph 11 of the Complaint characterize Illinois statutes, which speak for themselves and are the best evidence of their contents.

12. Under the Illinois Regional Planning Act, the CMAP Board must "develop and adopt a process" for making transportation decisions that ensures that all "plans, reports, and programs" required of a "metropolitan planning organization" under federal law "shall be approved by the CMAP Board prior to final approval by the MPO [Policy Committee]." 70 ILCS 1707/60(c).

**ANSWER:** The averments in Paragraph 12 of the Complaint characterize an Illinois statute, which speaks for itself and is the best evidence of its contents.

13.     Defendant MPO Policy Committee is an Illinois public agency that is designated under state law as the "metropolitan planning organization" for the Chicago metropolitan area for purposes of federal law, including the Federal-Aid Highway Act, 23 U.S.C. § 101 *et seq.* Although the existence of an MPO is required by federal law, MPOs are formed and designated under state law. Under the Illinois Regional Planning Act, the MPO Policy Committee is responsible for "final approval" of all transportation plans, reports, and programs required under federal law, but only after such plans, reports, and programs have received "prior" approval by the CMAP Board. 70 ILCS 1707/60.

**ANSWER:**     With respect to the first sentence of Paragraph 13 of the Complaint, Defendants admit that the MPO Policy Committee (the "Policy Committee") is an Illinois public agency, and that the Policy Committee has been designated as the "metropolitan planning organization" for the Chicago metropolitan area under the provisions of the Federal-Aid Highway Act, 23 U.S.C. § 101 *et seq.* Defendants deny any remaining factual averments in the first sentence of Paragraph 13.  The second sentence of Paragraph 13 characterizes the Federal-Aid Highway Act, which speaks for itself and is the best evidence of its contents.  The third sentence of Paragraph 13 characterizes the Illinois Regional Planning Act ("RPA"), which speaks for itself and is the best evidence of its contents.  To the extent that the second and third sentences of Paragraph 13 contain factual averments, Defendants deny those averments.

14.     The MPO Policy Committee exists as a body within the Chicago Metropolitan Agency for Planning ("CMAP"). The MPO Policy Committee conducts its business at CMAP's offices and relies on CMAP's staff for policy and administrative support, ranging from detailed analyses to the preparation of agendas and minutes. Funding for the MPO Policy Committee's activities is included within the larger CMAP budget.

**ANSWER:**     Defendants deny the averment in the first sentence of Paragraph 14 of the Complaint.  Defendants deny the averments in the second sentence of Paragraph 14, but state that the MPO Policy Committee conducts business at CMAP's offices.  Defendants further state that CMAP staff provides support to the MPO Policy Committee, but that the MPO Policy Committee retains all policy and decision-making authority.  Defendants admit the averment in the third sentence of Paragraph 14.

## VENUE

15.     Venue is proper in Cook County, Illinois under Sections 2-101 and 2-103 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-101 and 2-103, because the Defendants CMAP Board and MPO Policy Committee have their principal places of business in Chicago, Cook County, Illinois. Defendants Illinois Department of Transportation and Ann L. Schneider, in her official capacity as Secretary of the Illinois Department of Transportation, have offices and transact and conduct business in Cook County. Additionally, the transactions out of which Plaintiffs' causes of action arose occurred in Cook County, Illinois.

**ANSWER:**     The averment in the first sentence of Paragraph 15 of the Complaint is a conclusion of law, to which no responsive pleading is required. Defendants admit the averments in the second sentence of Paragraph 15. With respect to the third sentence of Paragraph 15, Defendants admit that the votes of the MPO Policy Committee and the CMAP Board that are referred to in Paragraphs 49, 65, and 66 of the Complaint took place in Cook County, Illinois. Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining factual averments in Paragraph 15, and therefore deny those averments.

## APPLICABLE LAW

### The Illinois Regional Planning Act

16.     The Illinois Regional Planning Act, 705 ILCS 1707/1 *et seq.,* sets forth requirements for transportation planning in northeastern Illinois.

**ANSWER:**     The averments in Paragraph 16 of the Complaint characterize the RPA, which speaks for itself and is the best evidence of its contents. Defendants deny any averments in Paragraph 16 that are contrary to the Act's plain language, meaning, or context.

17.     The Illinois Regional Planning Act created CMAP to serve as a consolidated regional planning agency for northeastern Illinois. CMAP's stated purpose is "to plan for the most effective public and private investments in the northeastern Illinois region and to better integrate plans for land use and transportation." 70 ILCS 1707/5.

**ANSWER:**     The averments in Paragraph 17 of the Complaint purport to characterize the RPA, which speaks for itself and is the best evidence of its contents. Defendants deny any averments in Paragraph 17 that are contrary to the Act's plain language, meaning, or context.

18.     The Illinois Regional Planning Act created the CMAP Board as the governing body of CMAP. 70 ILCS 1707/15. The CMAP Board's voting members are representatives of the City of Chicago and seven counties in the Chicago metropolitan area. *Id.*

**ANSWER:**     The averments in Paragraph 18 of the Complaint purport to characterize the RPA, which speaks for itself and is the best evidence of its contents.  Defendants deny any averments in Paragraph 18 that are contrary to the Act's plain language, meaning, or context.

19.     The Illinois Regional Planning Act requires that all MPO planning documents for northeastern Illinois be first approved by the CMAP Board as a necessary precondition for the MPO Policy Committee to then consider them for approval.

**ANSWER:**     The averments in Paragraph 19 of the Complaint purport to characterize the RPA, which speaks for itself and is the best evidence of its contents.  Defendants deny any averments in Paragraph 19 that are contrary to the Act's plain language, meaning, or context.

20.     The Illinois Regional Planning Act specifically states: "The Board, in cooperation with local governments and transportation providers, shall develop a process for making the transportation decisions that require final MPO approval pursuant to federal law. That process shall comply with all applicable federal requirements. The adopted process shall ensure that all MPO plans, reports, and programs shall be approved by the CMAP Board prior to final approval by the MPO." 70 ILCS 1707/60(c) (emphasis added).

**ANSWER:**     The averments in Paragraph 20 of the Complaint characterize the RPA, which speaks for itself and is the best evidence of its contents.

21.     The Illinois Regional Planning Act further states: "Each local government, transportation agency, and State agency shall cooperate with and assist the [CMAP] Board in carrying out its functions and shall provide to the [CMAP] Board all information requested by the Board." 70 ILCS 1707/51.

**ANSWER:**     The averments in Paragraph 21 of the Complaint characterize the RPA, which speaks for itself and is the best evidence of its contents.

22.     The Illinois Regional Planning Act recognizes the Defendant MPO Policy Committee as the designated metropolitan planning organization for the Chicago region. 70 ILCS 1707/60(a). The MPO Policy Committee's voting members are representatives from transportation agencies, including State of Illinois agencies and local governments. At all times relevant to this Complaint, Defendant Ann L. Schneider, in her official capacity as Secretary of the Illinois Department of Transportation, served as the Chair of the MPO Policy Committee.

**ANSWER:** The first sentence in Paragraph 22 of the Complaint characterizes the RPA, which speaks for itself and is the best evidence of its contents. With respect to the second sentence of Paragraph 22, Defendants admit that the members of the Policy Committee represent multiple agencies, including State of Illinois and local agencies. To the extent Paragraph 22 contains additional factual averments, Defendants deny those averments. Defendants admit the averments in the third sentence of Paragraph 22.

## The Federal-Aid Highway Act

23. The Federal-Aid Highway Act ("FAHA"), 23 U.S.C. § 101 *et seq.,* sets out requirements for state departments of transportation to receive federal financial assistance for highway projects.

**ANSWER:** The averments in Paragraph 23 of the Complaint characterize the Federal-Aid Highway Act ("FAHA"), which speaks for itself and is the best evidence of its contents.

24. The FAHA requires the designation of a "metropolitan planning organization" ("MPO") for every metropolitan area with a population of more than 50,000 individuals. 23 U.S.C. § 134(d)(1).

**ANSWER:** The averments in Paragraph 24 of the Complaint characterize FAHA, which speaks for itself and is the best evidence of its contents.

25. An MPO must approve two documents that describe all of the transportation projects that are planned for its area: (1) the long-range Metropolitan Transportation Plan ("MTP") and (2) the shorter-term metropolitan Transportation Improvement Program ("TIP"). 23 U.S.C. § 134(i) and (j). The MTP must prioritize transportation projects needed over the next twenty years, and the TIP must provide more detailed financial information on projects to be completed during the next four years. *Id.*

**ANSWER:** The averments in Paragraph 25 of the Complaint characterize the FAHA, which speaks for itself and is the best evidence of its contents.

26. In order for a specific transportation project to be eligible to receive federal financial assistance, the project must be included in both the MTP and TIP for the region. *See, e.g.,* 23 U.S.C. § 134(j).

**ANSWER:** The averments in Paragraph 26 of the Complaint characterize the FAHA, which speaks for itself and is the best evidence of its contents.

27. The Illinois Regional Planning Act and the FAHA thereby provide a three-step process for the approval of federal highway projects in northeastern Illinois:
   (1) The CMAP Board must first decide whether to approve a transportation plan or program "prior to final approval" by the MPO Policy Committee. 70 ILCS 1707/60(c).
   (2) If the CMAP Board votes to approve a transportation plan or program, only then may the MPO Policy Committee consider and decide whether to approve the plan or program. *Id.*
   (3) If the MPO Policy Committee approves the plan or program only then may DOT proceed with the federal highway projects that have been specifically included therein. 23 U.S.C. § 134(j).

**ANSWER:** The averments in Paragraph 27 of the Complaint purport to characterize the RPA and FAHA, which speak for themselves and are the best evidence of their contents. Defendants deny any averments in Paragraph 27 that are contrary to the plain language, meaning, or context of those statutes.

28. The Public Private Agreements for the Illiana Expressway Act ("Illiana Expressway Act") was enacted in 2010 to authorize DOT to develop the proposed Illiana Tollway and to seek federal financial assistance for the project, subject to "all applicable planning requirements otherwise required by law, including land use planning, regional planning, transportation planning, and environmental compliance requirements." 605 ILCS 130/55.

**ANSWER:** The averments in Paragraph 28 of the Complaint characterize the Public Private Agreements for the Illiana Expressway Act, which speaks for itself and is the best evidence of its contents.

## FACTS COMMON TO ALL COUNTS

### IDOT's Request to Amend CMAP's Metropolitan Transportation Plan and Transportation Improvement Plan to Include the Proposed Illiana Tollway

29. The Illiana Tollway is a proposed new 47-mile long four-lane tollway that would run from Interstate 55 near Wilmington, Illinois in southwestern Will County to Interstate 65 near Lowell, Indiana.

**ANSWER:** With respect to Paragraph 29 of the Complaint, Defendants admit that the Illiana Corridor Project (the "Project") is a proposed approximately 47-mile long east-west limited access highway between I-55 in Illinois and I-65 in Indiana, located in Will County, Illinois and Lake County, Indiana.

30. IDOT stated that the overall construction cost of the Illiana Tollway would be at least $1.3 billion of which the State of Illinois would be responsible for $1 billion.

**ANSWER:** Defendants deny the averments in Paragraph 30 of the Complaint. Defendants affirmatively state that IDOT, the Indiana Department of Transportation ("INDOT"), and the Federal Highway Administration ("FHWA") have estimated the programming cost requirement of the Illiana Corridor Project at approximately $1.3 billion, which includes construction, land acquisition, utility relocation, and engineering/construction oversight. The Illinois contribution to the Project is expected to be approximately $1 billion.

31. The Illiana Tollway is proposed to run along the southern border of the Midewin National Tallgrass Prairie, the nation's first such designated tallgrass prairie.

**ANSWER:** With respect to the averments in Paragraph 31 of the Complaint, Defendants admit that the proposed Project would be located near the southern boundary of the Midewin National Tallgrass Prairie ("Midewin").

32. The Illiana Tollway and its traffic would specifically adversely impact the Midewin National Tallgrass Prairie.

**ANSWER:** Defendants deny the averments in Paragraph 32 of the Complaint. Defendants admit that the effects of the proposed Project on the Midewin National Tallgrass Prairie are currently being evaluated in the Tier II National Environmental Policy Act ("NEPA") process.

33. In comments submitted during the environmental study process for the tollway, the United States Forest Service, which administers and oversees the Midewin National Tallgrass Prairie, stated that the tollway would "cause irreparable damage" to the National Tallgrass Prairie's habitat due to its close proximity.

10

**ANSWER:** The averments in Paragraph 33 of the Complaint purport to characterize comments of the United States Forest Service, which speak for themselves and are the best evidence of their contents.

34. The Illiana Tollway and its traffic would adversely impact natural resources regularly used and enjoyed by Plaintiffs' members.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 34 of the Complaint, and therefore deny them.

35. CMAP's Metropolitan Transportation Plan ("MTP") for the Chicago region is often referred to as the GO TO 2040 Comprehensive Regional Plan ("GO TO 2040 Plan").

**ANSWER:** With respect to the averments in Paragraph 35 of the Complaint, Defendants admit that the GO TO 2040 Comprehensive Regional Plan adopted by CMAP incorporates the Metropolitan Transportation Plan ("MTP") approved by the Policy Committee. To the extent that Paragraph 35 contains additional factual averments, Defendants deny those averments.

36. On April 8, 2013, Defendant IDOT formally requested that CMAP amend its MTP to include the proposed Illiana Tollway as a "fiscally constrained" capital project.

**ANSWER:** With respect to the averments in Paragraph 36 of the Complaint, Defendants admit that, by letter dated April 8, 2013, IDOT formally requested that the MTP be amended to include the proposed Illiana Corridor Project as a "fiscally constrained" capital project.

37. On or before July 26, 2013, Defendant IDOT also requested that CMAP amend its Transportation Improvement Program ("TIP") to include an additional $81.5 million in State funding for the proposed Illiana Tollway through fiscal year 2015.

**ANSWER:** With respect to the averments in Paragraph 37 of the Complaint, Defendants admit that, on or before July 26, 2013, IDOT requested that the TIP be amended to

include an additional $81.5 million in State funding for the proposed Illiana Corridor Project through fiscal year 2015.

38.    By its requests, IDOT triggered the first step of the three-step process described above.

**ANSWER:**    The averment in Paragraph 38 of the Complaint is a conclusion of law, to which no responsive pleading is required.  To the extent that the averments in Paragraph 38 purport to characterize the requests described in Paragraphs 36 and 37 of the Complaint, those requests speak for themselves and are the best evidence of their contents.

39.    Under the Illinois Regional Planning Act, the CMAP Board must first approve the proposed amendments to the MTP, often referred to as the GO TO 2040 Plan, and, also, approve the amended TIP "prior to final approval" by the MPO Policy Committee. 70 ILCS 1707/60(c).

**ANSWER:**    The averments in Paragraph 39 of the Complaint purport to characterize the RPA, which speaks for itself and is the best evidence of its contents.  Defendants deny any averments in Paragraph 39 that are contrary to the plain language, meaning, or context of the RPA.

### The CMAP Board Denied IDOT's Proposed Amendments

40.    The Illinois Regional Planning Act provides that programs and plans, including amendments to CMAP's MTP, often referred to as the GO TO 2040 Plan, and TIP must "be approved by the CMAP Board prior to final approval by the MPO [Policy Committee]." 70 ILCS 1707/60(c).

**ANSWER:**    The averments in Paragraph 40 of the Complaint purport to characterize the RPA, which speaks for itself and is the best evidence of its contents.

41.    IDOT's requests to amend the MTP, often referred to as the GO TO 2040 Plan, and TIP to specifically include the proposed new Illiana Tollway were placed on the CMAP Board's agenda for its October 9, 2013 meeting.

**ANSWER:**    The averments in Paragraph 41 characterize the agenda for the CMAP Board's October 9, 2013 meeting.  This document speaks for itself and is the best evidence of its contents.

42.    CMAP allowed a public comment period on IDOT's proposals. On September 3, 2013, Plaintiffs Openlands, Sierra Club and other civic organizations, submitted a comment letter that raised concerns over the proposed Illiana Tollway's high costs and limited transportation benefits.

**ANSWER:**    With respect to the averment in the first sentence of Paragraph 42 of the Complaint, Defendants admit that the CMAP Transportation Committee released the CMAP staff analysis of the proposed Illiana Expressway plan amendment for a 32-day public comment period.  The averment in the second sentence of Paragraph 42 characterizes the comment letter submitted by Plaintiffs and other organizations.  This letter speaks for itself and is the best evidence of its contents.

43.    In their September 3, 2013 comment letter, Plaintiffs also expressed concerns that building the tollway would divert State transportation funds from other regional needs.

**ANSWER:**    The averments in Paragraph 43 of the Complaint characterize the Plaintiffs' comment letter, which speaks for itself and is the best evidence of its contents.

44.    In their September 3, 2013 comment letter, Plaintiffs also identified negative impacts that the proposed Illiana Tollway and its traffic would have on the Midewin National Tallgrass Prairie, the Kankakee River and other natural resources that are used and enjoyed by their members.

**ANSWER:**    The averments in Paragraph 44 of the Complaint characterize the Plaintiffs' comment letter, which speaks for itself and is the best evidence of its contents.

45.    On September 27, 2013, CMAP's staff recommended that the CMAP Board and the MPO Policy Committee not approve amending the MTP, often referred to as the GO TO 2040 Plan, to include the proposed Illiana Tollway.

**ANSWER:**    With respect to the averments in Paragraph 45 of the Complaint, Defendants admit that the CMAP staff prepared a memorandum to the Transportation Committee dated September 27, 2013 (the "CMAP Staff Recommendation Memo").  That document speaks for itself and is the best evidence of its contents.

46.    CMAP staff's September 27, 2013 recommendation document identified four specific issues "that should be of particular concern" to the CMAP Board and MPO Policy

Committee in considering whether or not to approve IDOT's request: (1) the proposed Illiana Tollway's costs and financial risks; (2) IDOT's population growth assumptions that contradicted those in CMAP's MTP, often referred to as the GO TO 2040 Plan; (3) the proposed Illiana Tollway's unsubstantiated potential for economic development; and (4) the proposed Illiana Tollway's limited benefits for regional mobility.

**ANSWER:**     The averments in Paragraph 46 of the Complaint characterize the CMAP

Staff Recommendation Memo, which speaks for itself and is the best evidence of its contents.

47.     CMAP staff's September 27, 2013 recommendation document estimated that building the proposed Illiana Tollway would require a public subsidy from the State of Illinois of $400 million to $1.1 billion during the term of the agreement with the private contractor, even after taking into consideration potential toll revenues.

**ANSWER:**     The averments in Paragraph 47 of the Complaint characterize the CMAP

Staff Recommendation Memo, which speaks for itself and is the best evidence of its contents.

48.     CMAP staff stated in its recommendation document that the proposed Illiana Tollway would have "negligible impacts on regional transportation performance" because it would be located well south of the Chicago metropolitan area's major congested areas.

**ANSWER:**     The averments in Paragraph 48 of the Complaint characterize the CMAP

Staff Recommendation Memo, which speaks for itself and is the best evidence of its contents.

49.     On October 9, 2013, the CMAP Board voted 10 to 4 against a motion that the MTP, often referred to as the GO TO 2040 Plan, be amended to include the proposed Illiana Tollway. *See* CMAP Board Minutes of October 9, 2013 Meeting at 5, attached as Exhibit A.

**ANSWER:**     With respect to the averments in Paragraph 49 of the Complaint,

Defendants admit that the CMAP Board meeting minutes attached as Exhibit A to the Complaint

state that, at its October 9, 2013 meeting, the CMAP Board voted 10 to 4 against a motion "to

amend the GO TO 2040 Plan to include the Illiana Corridor Project."

50.     Because the CMAP Board voted 10 to 4 against the motion that the MTP, often referred to as the GO TO 2040 Plan, be amended to include the Illiana Tollway, the CMAP Board did not provide its "approv[al]" under the Illinois Regional Planning Act. 70 ILCS 1707/60(c). *See* Exhibit A at 5.

**ANSWER:** The averments in Paragraph 50 of the Complaint are conclusions of law, to which no responsive pleading is required. To the extent that Paragraph 50 may be construed to contain factual averments, Defendants deny those averments.

51. On October 9, 2013, the CMAP Board also voted unanimously to approve some proposed amendments to CMAP's TIP, but excluded IDOT's proposed amendment of the TIP that would have also included an additional $81.5 million of State funding to support the proposed Illiana Tollway through fiscal year 2015. *See* Exhibit A at 6.

**ANSWER:** With respect to the averments in Paragraph 51 of the Complaint, Defendants admit that the CMAP Board meeting minutes attached as Exhibit A to the Complaint state that, at its October 9, 2013 meeting, the CMAP Board voted unanimously to approve a motion "to approve the GO TO 2040/TIP conformity analysis and TIP amendments that would exclude the Illiana Corridor project."

52. Because the CMAP Board voted against the motion that the TIP be amended to include the proposed Illiana Tollway, the CMAP Board did not provide its "approv[al]" under the Illinois Regional Planning Act. 70 ILCS 1707/60(c). *See* Exhibit A at 6.

**ANSWER:** The averments in Paragraph 52 of the Complaint are conclusions of law, to which no responsive pleading is required. To the extent that Paragraph 52 may be construed to contain factual averments, Defendants deny those averments.

53. The CMAP Board thus did not provide its prior approval of IDOT's proposed amendments of the MTP, often referred to as the GO TO 2040 Plan, and the TIP as required under the Illinois Regional Planning Act for those amendments and the proposed Illiana Tollway to proceed to the MPO Policy Committee for consideration and final approval. 70 ILCS 1707/60(c).

**ANSWER:** The averments in Paragraph 53 of the Complaint are conclusions of law, to which no responsive pleading is required. To the extent that Paragraph 53 may be construed to contain factual averments, Defendants deny those averments.

54. The proposed Illiana Tollway had not passed "Step 1" of the regional transportation planning process, and the MPO Policy Committee accordingly lacked legal authority to take any further action on the proposed Illiana Tollway.

**ANSWER:** The averments in Paragraph 54 of the Complaint are conclusions of law, to which no responsive pleading is required. To the extent that Paragraph 53 may be construed to contain factual averments, Defendants deny those averments.

**The MPO Policy Committee Purports to Approve IDOT's Proposed Amendments**

55. The MPO Policy Committee exists as a body within CMAP.

**ANSWER:** Defendants deny the averment in Paragraph 55 of the Complaint.

56. The MPO Policy Committee conducts its business at CMAP's offices.

**ANSWER:** Defendants deny the averment in Paragraph 56 of the Complaint, but state that the MPO Policy Committee conducts business at CMAP's offices.

57. The MPO Policy Committee relies on CMAP's staff for policy and administrative support.

**ANSWER:** Defendants deny the averment in Paragraph 57 of the Complaint, and state that that CMAP staff provides support to the MPO Policy Committee, but that the MPO Policy Committee retains all policy and decision-making authority.

58. The CMAP staff's support for the MPO Policy Committee includes technical analyses.

**ANSWER:** Defendants deny the averment in Paragraph 58 of the Complaint, but state that the CMAP staff conducts technical analyses under the direction and supervision of the MPO Policy Committee.

59. The CMAP staff's support for the MPO Policy Committee includes preparation of agendas and minutes.

**ANSWER:** Defendants deny the averment in Paragraph 59 of the Complaint, but state that the CMAP staff prepares agendas and minutes under the direction and supervision of the MPO Policy Committee.

60. Funding for the MPO Policy Committee's activities is included within the larger CMAP budget.

16

**ANSWER:**     Defendants admit the averment in Paragraph 60 of the Complaint.

61.     After the CMAP Board's October 9, 2013 votes to not approve the proposed Illiana Tollway, IDOT continued to request that the MPO Policy Committee vote on IDOT's proposed amendments of the MTP, often referred to as the GO TO 2040 Plan, and the TIP.

**ANSWER:**     With respect to the averments in Paragraph 61 of the Complaint, Defendants admit that, in a letter from the IDOT Secretary dated April 8, 2013, IDOT requested that the MPO Policy Committee vote to amend the Metropolitan Transportation Plan ("MTP") and Transportation Improvement Program ("TIP") to include the Illiana Corridor Project at the MPO Policy Committee's October 2013 meeting.  To the extent that Paragraph 61 contains any additional factual averments, Defendants deny those averments.

62.     Despite the CMAP Board's October 9, 2013 votes to not approve the Illiana Tollway, the MPO Policy Committee scheduled a meeting to conduct its own vote on IDOT's proposed amendments.

**ANSWER:**     With respect to the averments in Paragraph 62 of the Complaint, Defendants admit that the MPO Policy Committee considered amendments to the MTP and the TIP to include the Illiana Corridor Project at its October 17, 2013 meeting.  To the extent that Paragraph 62 contains any additional factual averments, Defendants deny those averments.

63.     On October 16, 2013, the Plaintiffs' attorneys sent a letter to the CMAP Board and MPO Policy Committee. *See* Exhibit B. The letter explained their legal view that, under Section 60(c) of the Regional Planning Act, the MPO Policy Committee was not authorized to "finally approve" the proposed amendment of the MTP, often referred to as the GO TO 2040 Plan, to include the proposed Illiana Tollway because the CMAP Board had rejected the amendment. 70 ILCS 1707/60(c).

**ANSWER:**     The averments in Paragraph 63 of the Complaint characterize a letter from the Plaintiffs' attorney to the CMAP Board and MPO Policy Committee, attached as Exhibit B to the Complaint.  This letter speaks for itself and is the best evidence of its contents.

64.     Defendant Ann L. Schneider, in her official capacity as the Secretary of the Illinois Department of Transportation, served as the Chair of the MPO Policy Committee during its October 17, 2013 meeting.

**ANSWER:** Defendants admit the averment in Paragraph 64 of the Complaint.

65. On October 17, 2013, the MPO Policy Committee voted 11 to 8 in favor of amending the MTP, often referred to as the GO TO 2040 Plan, to include the proposed Illiana Tollway. *See* Exhibit C at 9.

**ANSWER:** With respect to the averments in Paragraph 65 of the Complaint, Defendants admit that the MPO Policy Committee meeting minutes attached as Exhibit C to the Complaint state that, at its October 17, 2013 meeting, the MPO Policy Committee voted 11 to 8 to approve a motion "to amend GO TO 2040 to include the Illiana Corridor."

66. On October 17, 2013, the MPO Policy Committee also voted 11 to 8 in favor of amending the TIP to include an additional $81 5 million of State funding for the proposed Illiana Tollway through fiscal year 2015. *See* Exhibit C at 9.

**ANSWER:** With respect to the averments in Paragraph 66 of the Complaint, Defendants admit that the MPO Policy Committee meeting minutes attached as Exhibit C to the Complaint state that, at its October 17, 2013 meeting, the MPO Policy Committee voted 11 to 8 to approve a motion "to approve the GO TO 2040/TIP Conformity Demonstration and TIP Amendment."

67. At the MPO Policy Committee's October 17, 2013 meeting, Defendant Ann L. Schneider, Secretary of the Illinois Department of Transportation, cast votes in favor of amending the MTP, often referred to as the GO TO 2040 Plan, and the TIP to include the proposed Illiana Tollway.

**ANSWER:** Defendants deny the averments in Paragraph 67 of the Complaint, but state that, at the MPO Policy Committee's October 17, 2013 meeting, Defendant Ann L. Schneider, Secretary of the Illinois Department of Transportation, voted in favor of amending the MTP and the TIP to include the proposed Illiana Corridor Project.

68. On October 24, 2013, CMAP's Executive Director responded to the Plaintiffs' attorneys' October 16, 2013 letter. *See* Exhibit D.

**ANSWER:** The averments in Paragraph 68 of the Complaint characterize a letter from CMAP's Executive Director to Plaintiffs' attorneys, dated October 24, 2013, attached as Exhibit

D to the Complaint (the "October 24, 2013 CMAP Letter"). This letter speaks for itself and is the best evidence of its contents.

69.     In his October 24, 2013 letter, CMAP's Executive Director stated that "federal law vesting the [MPO] Policy Committee with authority to approve transportation plans trumps state law." *See* Exhibit D at 1.

**ANSWER:**     The averments in Paragraph 69 of the Complaint characterize the October 24, 2013 CMAP Letter, which speaks for itself and is the best evidence of its contents.

70.     In the October 24, 2013 letter, CMAP's Executive Director further asserted that "the final action of the Policy Committee to approve the Illiana amendment is binding." *See* Exhibit D at 1.

**ANSWER:**     The averments in Paragraph 70 of the Complaint characterize the October 24, 2013 CMAP Letter, which speaks for itself and is the best evidence of its contents.

71.     CMAP's position that federal law "trumps" the Illinois Regional Planning Act expresses a legal position that Section 60(c) of the Act is unconstitutional. 70 ILCS 1707/60(c).

**ANSWER:**     The averment in Paragraph 71 is a conclusion of law to which no response is required.  To the extent that Paragraph 71 purports to characterize the October 24, 2013 CMAP Letter, that letter speaks for itself and is the best evidence of its contents.

72.     CMAP is a municipal corporation created under the Illinois Regional Planning Act and has only the powers granted by Illinois law. Ill. Const. 1970, art. VII, sec. 8.

**ANSWER:**     With respect to the averments in Paragraph 72, Defendants admit that CMAP is a municipal corporation created under the Illinois Regional Planning Act.  The remaining averments in Paragraph 72 are conclusions of law to which no response is required.

73.     On information and belief, CMAP has not requested an advisory opinion from the Illinois Attorney General regarding the constitutionality of Section 60(c) of the Illinois Regional Planning Act.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 73 of the Complaint, and therefore deny them.

74.     On information and belief, the MPO Policy Committee has not requested an advisory opinion from the Illinois Attorney General regarding the constitutionality of Section 60(c) of the Illinois Regional Planning Act.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 74 of the Complaint, and therefore deny them.

75.     On information and belief, IDOT has not requested an advisory opinion from the Illinois Attorney General regarding the constitutionality of Section 60(c) of the Illinois Regional Planning Act.

**ANSWER:**     Defendants admit the averment in Paragraph 75 of the Complaint.

### IDOT's Expenditures of Public Funds and Planned Expenditures

76.     IDOT has disbursed at least $40 million of Illinois state funds to study the proposed Illiana Tollway.

**ANSWER:**     With respect to the averment in Paragraph 76 of the Complaint, Defendants admit that IDOT has obligated at least $40 million of Illinois state funds toward the Illiana Corridor Project.

77.     IDOT proposes to spend up to $500 million of public funds on the proposed Illiana Tollway through 2019, with additional contributions required thereafter.

**ANSWER:**     Defendants deny the averment in Paragraph 77 of the Complaint, but state that the document entitled *Illiana Corridor Fiscal Constraint Demonstration for Inclusion in the Fiscally Constrained CMAP Go To 2040 Comprehensive Regional Plan*, dated September 27, 2013 (the "Fiscal Constraint Demonstration"), states that IDOT proposes to invest up to $500 million of Illinois state funds during construction of the Project, and that IDOT anticipates that a portion of the public funds expended may be offset by toll revenues received for the Project. Defendants further state that IDOT anticipates paying the Developer availability payments commencing in approximately 2018, based on the Developer meeting specified performance measures.

78.     IDOT has been developing the proposed Illiana Tollway as a project intended to receive federal financial support.

**ANSWER:**     Defendants deny the averment in Paragraph 78 of the Complaint, but state that IDOT has been developing the proposed Illiana Corridor Project to be eligible to receive federal financial assistance.

79.     IDOT is requesting a loan from the Federal Highway Administration to support developing the proposed Illiana Tollway.

**ANSWER:**     Defendants deny the averment in Paragraph 79 of the Complaint, but state that IDOT is applying for credit assistance for the Project in the form of a loan under the Transportation Infrastructure Finance and Innovation Act (TIFIA) program.  Such loan allocation would be made available to the Developer.

80.     On March 17, 2014, IDOT announced that the Federal Highway Administration had determined that the proposed Illiana Tollway is eligible to apply for a federal loan.

**ANSWER:**     The averment in Paragraph 80 of the Complaint characterizes the March 17, 2014 IDOT News Release, which speaks for itself and is the best evidence of its contents. Defendants further state that, on or about March 17, 2014, IDOT received an invitation to proceed to the "Creditworthiness Review" stage of the TIFIA loan application process, indicating that the Project is reasonably likely to satisfy the eligibility requirements of the TIFIA program.  Defendants deny any remaining factual averments in Paragraph 80.

81.     IDOT is requesting that private contractors consider participating in a "public-private partnership" agreement to construct the proposed Illiana Tollway.

**ANSWER:**     Defendants deny the averment in Paragraph 81 of the Complaint, but state that IDOT issued a Request for Proposals (RFP) seeking proposals to develop, design, build, finance, operate, and maintain the Illiana Corridor Project pursuant to a public-private partnership with IDOT.  The selected proposer would be referred to as the "Developer."

82.     IDOT advised CMAP that, under the proposed "public-private partnership" agreement, the State of Illinois would be required to pay between $250 million and $300 million during the years 2015 through 2017 for land acquisition, utility relocations, and engineering for the tollway, and up to 200 million during the years 2018 and 2019 in "milestone payments" to the private contractor.

**ANSWER:**     Defendants deny the averments in Paragraph 82 of the Complaint, but state that the September 27, 2013 Fiscal Constraint Demonstration states that IDOT estimated that $250 million to $300 million in Illinois state funds would be required to be invested during the construction of the Illiana Corridor Project (assumed to be 2015 to 2017) for land acquisition, utility relocations, and engineering, and that IDOT may also invest up to $200 million in milestone payments in 2018 and 2019.

83.     IDOT stated that the State of Illinois would agree to pay the selected private contractor guaranteed annual payments from 2018 to 2053 in exchange for the contractor building the tollway and keeping it open for use by traffic.

**ANSWER:**     Defendants deny the averment in Paragraph 83 of the Complaint, but state that IDOT would pay Availability Payments to the Developer.  Defendants further state that the Availability Payments are anticipated to be paid from approximately 2018 to 2053, depending on several factors, including timing of construction completion.  Defendants also state that the Availability Payments would most likely be monthly, not annual, and that the Availability Payments would not be guaranteed but would be based on meeting specified performance measures.  Defendants further state that IDOT has not selected a Developer or negotiated a public-private agreement to date.

### IDOT Continues to Develop the Illiana Tollway

84.     Since the MPO Policy Committee's October 17, 2013 meeting, IDOT has publicly maintained that the MPO Policy Committee's vote was legally effective in amending the MTP, often referred to as the GO TO 2040 Plan, and the TIP to include the proposed Illiana Tollway.

**ANSWER:** With respect to the averment in Paragraph 84 of the Complaint, Defendants admit that the MTP and TIP were properly amended to include the proposed Illiana Corridor Project.

85. Public Act 98-0050 appropriates public funds to IDOT for the fiscal year ending June 30, 2014.

**ANSWER:** The averment in Paragraph 85 of the Complaint characterizes Public Act 98-0050, which speaks for itself and is the best evidence of its contents.

86. Public Act 98-0050 includes two appropriations designated for costs associated with the proposed Illiana Tollway (0596 and 0011-49442-7900-0213).

**ANSWER:** The averment in Paragraph 86 of the Complaint characterizes Public Act 98-0050, which speaks for itself and is the best evidence of its contents.

87. One of the appropriations designated for costs associated with the proposed Illiana Tollway is from the Illiana Expressway Proceeds Fund.

**ANSWER:** The averment in Paragraph 87 of the Complaint characterizes Public Act 98-0050, which speaks for itself and is the best evidence of its contents.

88. One of the appropriations designated for costs associated with the proposed Illiana Tollway is from the Road Fund.

**ANSWER:** The averment in Paragraph 88 of the Complaint characterizes Public Law 98-0050, which speaks for itself and is the best evidence of its contents.

89. Public Act 98-0050 also includes several appropriations designated for costs associated with IDOT's "Road Improvement Program." These include appropriations from the State Construction Account Fund, Road Fund, Transportation Bond Series A Fund, and Transportation Bond Series D Fund.

**ANSWER:** The averments in Paragraph 89 of the Complaint characterize Public Act 98-0050, which speaks for itself and is the best evidence of its contents.

90. IDOT has included project engineering and land acquisition activities for the proposed Illiana Tollway for the fiscal year ending June 30, 2014, and subsequent years, in its "Highway Improvement Program" based on the TIP amendment which was the subject of the MPO Policy Committee's October 17, 2013 vote.

**ANSWER:** With respect to the averments in Paragraph 90 of the Complaint, Defendants admit that IDOT's Fiscal Year 2014–2019 Highway Improvement Program includes project engineering and land acquisition activities for the Illiana Corridor Project.

91. Since the MPO Policy Committee's October 17, 2013 meeting, IDOT has continued to carry out activities to develop the proposed Illiana Tollway as a federally assisted tollway.

**ANSWER:** With respect to the averments in Paragraph 91 of the Complaint, Defendants admit that IDOT, INDOT, and FHWA have continued to engage in the NEPA process and other project planning activities.

92. IDOT's activities for the proposed Illiana Tollway include: (1) carrying out an ongoing "public-private partnership" procurement process; (2) seeking federal financial assistance for the proposed Illiana Tollway from the Federal Highway Administration; and (3) completing an ongoing environmental impact study process required under the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*

**ANSWER:** Defendants admit the averments in Paragraph 92 of the Complaint. With respect to Subsection (2) of Paragraph 92, Defendants further state that IDOT has initiated the process to obtain credit assistance for the Project in the form of a loan under the TIFIA program. Such loan allocation would be made available to the Developer.

93. IDOT intends to begin acquiring land to build the Illiana Tollway as soon as June 2014.

**ANSWER:** Defendants deny the averment in Paragraph 93 of the Complaint.

94. Defendant Ann L. Schneider will incur substantial expenses in her official capacity as Secretary of the Illinois Department of Transportation in continuing to develop the proposed Illiana Tollway.

**ANSWER:** With respect to the averment in Paragraph 94 of the Complaint, Defendants admit that IDOT continues to expend state funds for the planning process for the Illiana Corridor Project. Defendants deny any remaining factual averments in Paragraph 94.

## Count I:  Declaratory Judgment (735 ILCS 5/2-701) and Injunctive Relief

95.     Plaintiff realleges Paragraphs 1 through 94.

**ANSWER:**     Defendants re-allege their responses to Paragraphs 1 through 94 above.

96.     The CMAP Board is required under the Illinois Regional Planning Act to "develop a process" for making regional transportation decisions that "shall ensure that all MPO plans, reports, and programs shall be approved by the CMAP Board prior to final approval by the MPO [Policy Committee]." 70 ILCS 1707/60(c).

**ANSWER:**     The averments in Paragraph 96 of the Complaint are conclusions of law to which no response is required.

97.     The CMAP Board has not approved IDOT's proposed amendments of the MTP, often referred to as the GO TO 2040 Plan, and the TIP to include the proposed Illiana Tollway as a "fiscally constrained" capital project.

**ANSWER:**     With respect to the averment in Paragraph 97 of the Complaint, Defendants admit that the CMAP Board meeting minutes attached as Exhibit A to the Complaint state that, at its October 9, 2013 meeting, the CMAP Board voted 10 to 4 against a motion "to amend the GO TO 2040 Plan to include the Illiana Corridor Project."  Defendants also admit that the MTP and TIP were properly amended to include the proposed Illiana Corridor Project as a "fiscally constrained" capital project.  To the extent that Paragraph 97 contains additional factual averments, Defendants deny those averments.

98.     The CMAP Board violated Section 60(c) of the Illinois Regional Planning Act by not adopting a regional transportation decision-making process that ensures that all MPO plans, reports, and programs were approved by the CMAP Board prior to final approval by the MPO Policy Committee. 70 ILCS 1707/60(c).

**ANSWER:**     The averments in Paragraph 98 of the Complaint are conclusions of law to which no response is required.  To the extent that the averments in Paragraph 98 require a response, Defendants deny those averments.

99.     Accordingly, the MPO Policy Committee had no authority to consider or approve IDOT's proposed amendments of the MTP, often referred to as the GO TO 2040 Plan, and the TIP to include the proposed Illiana Tollway as a "fiscally constrained" capital project.

**ANSWER:** The averments in Paragraph 99 of the Complaint are conclusions of law to which no response is required.

100. The MPO Policy Committee's October 17, 2013 vote to amend the MTP, often referred to as the GO TO 2040 Plan, and the TIP to include the proposed Illiana Tollway as a "fiscally constrained" capital project violated Section 60(c) of the Illinois Regional Planning Act and were not authorized under Section 60(c) of the Illinois Regional Planning Act. 70 ILCS 1707/60(c).

**ANSWER:** The averments in Paragraph 100 of the Complaint are conclusions of law to which no response is required.

101. The MPO Policy Committee lacked legal authority to amend the MTP, often referred to as the GO TO 2040 Plan, and the TIP to include the proposed Illiana Tollway.

**ANSWER:** The averments in Paragraph 101 of the Complaint are conclusions of law to which no response is required. To the extent that the averments in Paragraph 101 require a response, Defendants deny those averments.

102. IDOT's continued development of the proposed Illiana Tollway is not authorized under the Illiana Expressway Act, 605 ILCS 130/55, because the project has not complied with all applicable planning requirements, including but not limited to Section 60 of the Illinois Regional Planning Act.

**ANSWER:** The averments in Paragraph 102 of the Complaint are conclusions of law to which no response is required.

103. IDOT's actions requesting that the MPO Policy Committee approve the proposed Illiana Tollway after the CMAP Board failed to approve and voted to reject IDOT's proposed amendments of the MTP, often referred to as the GO TO 2040 Plan, and the TIP, and in continuing to develop the proposed Illiana Tollway, have violated and continue to violate IDOT's duty under Section 51 of the Illinois Regional Planning Act, 70 ILCS 1707/51, to "cooperate with and assist" the CMAP Board in carrying out its functions.

**ANSWER:** The averments in Paragraph 103 of the Complaint are conclusions of law to which no response is required.

104. Unless the Defendants' failures to comply with the requirements of the Illinois Regional Planning Act are declared unlawful, Plaintiffs and other taxpayers will suffer irreparable harm due to IDOT's illegal disbursement of public funds, described in Paragraphs 76 through 94.

**ANSWER:** The averments in Paragraph 104 of the Complaint are conclusions of law to which no response is required. To the extent that Paragraph 104 may be construed to contain factual averments, Defendants deny those averments.

105. Unless the Defendants' failures to comply with the requirements of the Illinois Regional Planning Act are declared unlawful, Plaintiffs and other taxpayers will suffer irreparable harm to their use and enjoyment of the natural resources that would be adversely impacted by the proposed Illiana Tollway.

**ANSWER:** The averments in Paragraph 105 of the Complaint are conclusions of law to which no response is required. To the extent that Paragraph 105 may be construed to contain factual averments, Defendants deny those averments.

106. Defendant CMAP Board's position that federal law "trumps" Section 60(c) of the Illinois Regional Planning Act is not supported by law. CMAP is a municipal corporation created under the Illinois Regional Planning Act and has only the powers granted by Illinois law. Ill. Const. 1970, art. VII, sec. 8. IDOT, the CMAP Board and the MPO Policy Committee lack authority to decide on their own that an Illinois state statute is unconstitutional and should not be followed.

**ANSWER:** The averments in Paragraph 106 of the Complaint are conclusions of law to which no response is required.

107. The CMAP Board's position that federal law "trumps" the Illinois Regional Planning Act also is not supported by law because the Illinois Regional Planning Act is not inconsistent with federal law. The Illinois Regional Planning Act's requirement that the MPO Policy Committee shall provide "final approval" to all MPO documents, 70 ILCS 1707/60(c), is consistent with the requirements of the FAHA, 23 U.S.C. § 101 *et seq.* and other federal statutes.

**ANSWER:** The averments in Paragraph 107 of the Complaint are conclusions of law to which no response is required.

108. Plaintiffs have no adequate remedy at law. Plaintiffs' requested relief will redress the injuries to their members, and, unless this Court grants the requested relief, the Defendants' actions will cause irreparable harm to the Plaintiffs' and their members' interests, including the members' and the public's interests in: (a) the proper expenditure and disbursement of public funds, (b) their use and enjoyment of natural resources and areas that would be adversely impacted by the proposed Illiana Tollway, (c) effective regional transportation planning, and (d) the lawful administration of State statutes

**ANSWER:** The averments in Paragraph 108 of the Complaint are conclusions of law to which no response is required. To the extent that Paragraph 108 may be construed to contain factual averments, Defendants deny those averments.

### Count II: Statutory and Common-Law Taxpayer Action (735 ILCS 5/11-301 *et seq.*)

109.    Plaintiffs reallege Paragraphs 1 through 94.

**ANSWER:** Defendants re-allege their responses to Paragraphs 1 through 94 above.

110.    IDOT's continued development of the proposed Illiana Tollway is not authorized under the Illiana Expressway Act, 605 ILCS 130/55, because the IDOT and the proposed project have not fulfilled and complied with all applicable planning requirements, including but not limited to Section 60 of the Illinois Regional Planning Act.

**ANSWER:** The averments in Paragraph 110 of the Complaint are conclusions of law to which no response is required.

111.    IDOT's actions requesting that the MPO Policy Committee approve the proposed Illiana Tollway after the CMAP Board denied approval and voted to reject IDOT's proposed amendments of the MTP, often referred to as the GO TO 2040 Plan, and the TIP, and IDOT's continuing actions to develop the proposed Illiana Tollway have violated and continue to violate IDOT's duty under Section 51 of the Illinois Regional Planning Act, 70 ILCS 1707/51, to "cooperate with and assist" the CMAP Board in carrying out its functions.

**ANSWER:** The averments in Paragraph 111 of the Complaint are conclusions of law to which no response is required.

112.    Unless the Defendants' failures to fulfill and comply with the requirements of the Illinois Regional Planning Act are declared unlawful, Plaintiffs and other taxpayers will suffer irreparable harm resulting from IDOT's illegal expenditures and disbursements of public funds, described in Paragraphs 76 through 94.

**ANSWER:** The averments in Paragraph 112 of the Complaint are conclusions of law to which no response is required. To the extent that Paragraph 112 may be construed to contain factual averments, Defendants deny those averments.

113.    Plaintiffs have no adequate remedy at law. Plaintiffs' requested relief will redress the injuries to their members, and, unless this Court grants the requested relief, the Defendants' actions will cause irreparable harm to the Plaintiffs' and their members' interests, including the members' and the public's interests in: (a) the proper expenditure and disbursement of public

funds, (b) their use and enjoyment of natural resources and areas that would be adversely impacted by the proposed Illiana Tollway, (c) effective regional transportation planning, and (d) the lawful administration of State statutes.

**ANSWER:**   The averments in Paragraph 113 of the Complaint are conclusions of law to which no response is required.  To the extent that Paragraph 113 may be construed to contain factual averments, Defendants deny those averments.

## RELIEF REQUESTED

The averments under the heading "Relief Requested" are characterizations of the Complaint and the relief that Plaintiffs seek, and are conclusions of law, to which no responsive pleading is required.

Defendants deny any remaining averments of the Complaint that have not been specifically admitted or otherwise answered herein.

## AFFIRMATIVE DEFENSES

1.      The Complaint fails to state a claim upon which relief can be granted.

2.      Plaintiffs lack standing to bring the Complaint.

3.      The Complaint is barred by the doctrine of sovereign immunity.

Defendants give notice that they intend to rely on any defense that may be determined to be applicable as a result of discovery proceedings and reserve the right to amend their Answer and defenses accordingly.

ILLINOIS DEPARTMENT OF
TRANSPORTATION

By:  s/Michael A. Forti

Michael A. Forti
Special Assistant Attorney General
IL ARDC No. 3127929
100 West Randolph Street
Suite 6-600
Chicago, IL 60601
(312) 793-2255
Email: Michael.Forti@Illinois.gov

Cindy K. Bushur-Hallam
Special Assistant Attorney General
IL ARDC No. 6224594
2300 South Dirksen Parkway
Room 313
Springfield, IL 62794
(217) 782-3215
Email: cindy.bushur-hallam@illinois.gov

*Attorneys for Defendants Illinois Department of Transportation and Ann L. Schneider*

## CERTIFICATE OF SERVICE

I certify that on June 4, 2014, I electronically filed this Answer with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this matter.

s/ Michael A. Forti
Michael A. Forti

Special Assistant Attorney General
Illinois Department of Transportation
100 West Randolph Street
Suite 6-600
Chicago, IL 60601
(312) 793-2255
Email: Michael.Forti@Illinois.gov