# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

OPENLANDS, an Illinois not-for-profit )
corporation, and SIERRA CLUB, a California )
not-for-profit corporation, )
                                         ) No. 1:14-cv-03912
                           Plaintiffs, )
                                         ) Hon. Marvin E. Aspen
ILLINOIS DEPARTMENT OF TRANSPORTATION, )
an Illinois state agency; ANN L. SCHNEIDER, in her )
official capacity as Secretary of the Illinois Department )
of Transportation, BOARD OF THE CHICAGO )
METROPOLITAN AGENCY FOR PLANNING, an )
Illinois municipal corporation, and MPO POLICY )
COMMITTEE, an Illinois public agency, )
                                         )
                                Defendants. )

## DEFENDANTS BOARD OF THE CHICAGO METROPOLITAN AGENCY FOR PLANNING AND MPO POLICY COMMITTEE'S ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT

Defendants, Board of the Chicago Metropolitan Agency for Planning ("CMAP") and

MPO Policy Committee ("MPO"), answer and assert affirmative defenses to Plaintiffs' Amended

Complaint as follows:

## INTRODUCTION

The Defendant Illinois Department of Transportation ("IDOT") is planning to construct the proposed Illiana Tollway, a 47-mile tollway projected to cost at least $1.3 billion, which would run from Interstate 55, near Wilmington, Illinois in southwestern Will County, to Interstate 65 near Lowell, Indiana. In order for IDOT to proceed with the Illiana Tollway, it must first be included in the Chicago regional "Metropolitan Transportation Plan" ("MTP") and "Transportation Improvement Program" ("TIP"). The Illinois Regional Planning Act requires that both the MTP and TIP documents "shall be approved" by the Board of the Chicago Metropolitan Agency for Planning "prior to" any final approval by the MPO Policy Committee. 70 ILCS 1707/60(c).

Overall, the Illinois Regional Planning Act provides that a three-step process must be followed in order for IDOT to proceed with the proposed Illiana Tollway. "Step 1" is that the Board of the Chicago Metropolitan Agency for Planning ("CMAP Board") must first approve an MTP and TIP that includes the proposed Illiana Tollway. 70 ILCS 1707/60(c). "Step 2" is that the MPO Policy Committee must provide "final approval" of an MTP and TIP that include the

proposed Illiana Tollway. *Id.* "Step 3" is that IDOT is then authorized to proceed with the proposed Illiana Tollway as a project specifically included in a duly-approved MTP and TIP. *See*, *e.g.*, 23 U.S.C. § 134(j).

In this case, the proposed Illiana Tollway did not receive the required "Step 1" approval. On October 9, 2013, the CMAP Board voted by a 10 to 4 majority to reject IDOT's request to amend the Chicago metropolitan area's MTP and TIP to include the proposed Illiana Tollway as a "fiscally constrained" project. IDOT's request for approval was specifically denied. Nonetheless, the MPO Policy Committee, chaired by IDOT Secretary Ann Schneider, purported to take "Step 2" even though the CMAP Board did not provide its required "Step 1" "prior" approval.

On October 17, 2013, the MPO Policy Committee proceeded without legal authority and voted by 11 to 8 to approve the inclusion of the proposed Illiana Tollway in the MTP and TIP. Based on this unauthorized vote, IDOT now plans to spend hundreds of millions of dollars in public funds to develop the proposed Illiana Tollway with land acquisition beginning as early as June 2014.

Plaintiffs respectfully request that the Court declare that: (1) the MPO Policy Committee's October 17, 2013 vote was unauthorized, violated the Illinois Regional Planning Act, 70 ILCS 1707/60(c), and is without legal effect; and (2) IDOT lacks legal authority to spend public funds and otherwise take actions to develop the proposed Illiana Tollway. Plaintiffs also respectfully request that the court grant an injunction and enjoin Defendants IDOT and Ann L. Schneider, in her official capacity as Secretary of IDOT, from spending public funds and otherwise taking any actions to develop the proposed Illiana Tollway.

**ANSWER:** The introductory paragraphs are an introduction to which no answer by CMAP and MPO is required. The factual content of this introductory paragraph is more specifically contained in other allegations of the complaint, where they are answered. To the extent an answer is required, CMAP and MPO deny Plaintiffs' characterizations of the facts, deny Plaintiff's characterization of the Illiana Corridor project as a "Tollway," deny that the Illiana Corridor did not receive the required approvals, deny that Plaintiffs are entitled to relief, and deny the remaining allegations in this introduction.

**LEGAL BASIS**

1.      This Complaint is brought pursuant to 735 ILCS 5/2-701 and this Court's equitable jurisdiction and requests that this Court declare: (1) the Defendant MPO Policy Committee's October 17, 2013 votes to approve the proposed Illiana Tollway without the required "prior" approval of the Defendant CMAP Board were unauthorized, in violation of the Illinois Regional Planning Act, 70 ILCS 1707/60(c), and without legal effect; and (2) Defendants

IDOT and Ann L. Schneider, in her official capacity as Secretary of IDOT, are not legally authorized to spend public funds and otherwise further proceed with the proposed Illiana Tollway, and grant an injunction and enjoin Defendants IDOT and Ann L. Schneider, in her official capacity as Secretary of IDOT, from spending public funds and otherwise taking any actions to develop the proposed Illiana Tollway.

**ANSWER**:  Paragraph 1 contains an introduction to which no answer by CMAP and

MPO is required.  To the extent an answer is required, CMAP and MPO deny the allegations

contained in paragraph 1.

2.      This action also is brought pursuant to 735 ILCS 5/11-301 *et seq.* to enjoin the unlawful expenditures and disbursement of public funds by Ann L. Schneider, in her official capacity as the Secretary of IDOT, with regard to Defendant IDOT's unauthorized continued development of the proposed Illiana Tollway.

**ANSWER**:  Paragraph 2 contains an introduction to which no answer by CMAP and

MPO is required.  To the extent an answer is required, CMAP and MPO deny the allegations

contained in paragraph 2.

3.      This action also is brought pursuant to common law principles allowing suits in equity by taxpayers of the State to restrain unlawful expenditures and disbursements of public funds by State officials.

**ANSWER**:  Paragraph 3 contains an introduction to which no answer by CMAP and

MPO is required.  To the extent an answer is required, CMAP and MPO deny the allegations

contained in paragraph 3.

## PARTIES

4.      Plaintiff Openlands is a not-for-profit corporation organized and existing under the laws of the State of Illinois. Openlands has approximately 3,000 members who live in Illinois. Openlands works to protect and conserve natural areas and open spaces in northeastern Illinois and the surrounding region in order to ensure cleaner air and water, protect natural habitats and wildlife, and help balance and enrich the lives of northeastern Illinois's citizens. Openlands works to support effective regional land use and transportation planning that balances the growth of the Chicago metropolitan area with the responsibility to protect open spaces and natural resources for future generations. Openlands has participated in transportation planning processes in the Chicago metropolitan area for many years to advance its members' interests.

**ANSWER**:  CMAP and MPO admit that Openlands has involved itself in transportation issues in the Chicago metropolitan area, but lack knowledge sufficient to form a belief about the truth of the remaining allegations in paragraph 4.

5.      Openlands' members use and enjoy natural resources that would be adversely impacted by the Illiana Tollway. Openlands' members are also citizens and taxpayers of the State of Illinois who pay sales taxes, income taxes, motor vehicle taxes, motorist user fees and motor vehicle fuel taxes. Openlands' members are concerned that the Illiana Tollway is unneeded and financially imprudent, and will divert funds from other needed transportation projects in the Chicago region.

**ANSWER**:  CMAP and MPO lack knowledge sufficient to form a belief about the truth of the remaining allegations in paragraph 5.

6.      Plaintiff Sierra Club is a not-for-profit corporation organized and existing under the laws of the State of California. The Sierra Club is a national environmental organization with more than 630,000 members. More than 24,000 of these members live in Illinois. The Sierra Club has offices and programs and is doing business in the State of Illinois. The Sierra Club's purpose is to protect the natural environment and promote the responsible use of the Earth's ecosystems and resources. As part of its mission, the Sierra Club supports smart, sustainable transportation spending and works to encourage comprehensive regional planning to prevent inefficient sprawl growth. The Sierra Club has participated in transportation planning processes in the Chicago metropolitan area for many years to advance its members' interests.

**ANSWER**:  CMAP and MPO admit that Sierra Club has involved itself in transportation issues in the Chicago metropolitan area, but lack knowledge sufficient to form a belief about the truth of the remaining allegations in paragraph 6.

7.      The Sierra Club's members use and enjoy natural resources that would be adversely impacted by the proposed Illiana Tollway. The Sierra Club's members are also citizens and taxpayers of the State of Illinois who pay sales taxes, income taxes, motor vehicle taxes, motorist user fees and motor vehicle fuel taxes. The Sierra Club's members are concerned that the Illiana Tollway is unneeded and financially imprudent, and will divert funds from other needed projects in the Chicago region.

**ANSWER**:  CMAP and MPO lack knowledge sufficient to form a belief about the truth of the remaining allegations in paragraph 7.

8.      Plaintiffs Openlands and Sierra Club are also plaintiffs in a federal court lawsuit challenging the Tier 1 Environmental Impact Statement for the proposed Illiana Tollway under

the National Environmental Policy Act, 42 U.S.C. §4321 *et seq*. and other federal laws. *Openlands et al. v. Federal Highway Administration et al*. No. 1:13-cv-04950 (No. Dist. Ill.).

**ANSWER**: CMAP and MPO lack knowledge sufficient to form a belief about the truth of the allegations in paragraph 8.

9. Defendant Illinois Department of Transportation ("IDOT") is an agency of the State of Illinois, authorized by the Department of Transportation Law, 20 ILCS 2705/2705-1 *et seq*.

**ANSWER**: CMAP and MPO admit the allegations in paragraph 9.

10. Defendant Ann L. Schneider is the Secretary of the Illinois Department of Transportation.

**ANSWER**: CMAP and MPO admit the allegations in paragraph 10.

11. Defendant Board of the Chicago Metropolitan Agency for Planning ("CMAP Board") is an Illinois municipal corporation created by the Illinois Regional Planning Act, 70 ILCS 1707/1 *et seq*. The CMAP Board is the body within CMAP that is authorized to "sue and be sued in its official name." 70 ILCS 1707/35.

**ANSWER**: CMAP and MPO admits the allegations in paragraph 11, but clarifies that the Illinois Regional Planning Act, 70 ILCS 1707/15(a) states that "The Chicago Metropolitan Agency for Planning is established as a political subdivision, body politic, and municipal corporation."

12. Under the Illinois Regional Planning Act, the CMAP Board must "develop and adopt a process" for making transportation decisions that ensures that all "plans, reports, and programs" required of a "metropolitan planning organization" under federal law "shall be approved by the CMAP Board prior to final approval by the MPO [Policy Committee]." 70 ILCS 1707/60(c).

**ANSWER**: Denied except CMAP and MPO admit that 70 ILCS 1707/60(c) states the following:

> The Board, in cooperation with local governments and transportation providers, shall develop and adopt a process for making the transportation decisions that require final MPO approval pursuant to federal law. That process shall comply with all applicable federal requirements. The adopted process shall

ensure that all MPO plans, reports, and programs shall be approved by the CMAP Board prior to final approval by the MPO.

13. Defendant MPO Policy Committee is an Illinois public agency that is designated under state law as the "metropolitan planning organization" for the Chicago metropolitan area for purposes of federal law, including the Federal-Aid Highway Act, 23 U.S.C. § 101 *et seq.* Although the existence of an MPO is required by federal law, MPOs are formed and designated under state law. Under the Illinois Regional Planning Act, the MPO Policy Committee is responsible for "final approval" of all transportation plans, reports, and programs required under federal law, but only after such plans, reports, and programs have received "prior" approval by the CMAP Board. 70 ILCS 1707/60.

**ANSWER**: CMAP and MPO admit that MPO is the federally authorized Metropolitan

Planning Organization and that the procedures for designating a Metropolitan Planning

Organization are set forth in Section 134 the Federal-Aid Highways Act, 23 U.S.C. § 134, but

CMAP and MPO deny the remaining allegations in paragraph 13.

14. The MPO Policy Committee exists as a body within the Chicago Metropolitan Agency for Planning ("CMAP"). The MPO Policy Committee conducts its business at CMAP's offices and relies on CMAP's staff for policy and administrative support, ranging from detailed analyses to the preparation of agendas and minutes. Funding for the MPO Policy Committee's activities is included within the larger CMAP budget.

**ANSWER**: Denied except CMAP and MPO admit that MPO conducts business at

CMAP's offices, uses CMAP's staff for certain functions, that funding for MPO is included in

CMAP's budget, and that MPO retains all policy and decision-making authority.

## VENUE

15. Venue is proper in Cook County, Illinois under Sections 2-101 and 2-103 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-101 and 2-103, because the Defendants CMAP Board and MPO Policy Committee have their principal places of business in Chicago, Cook County, Illinois. Defendants Illinois Department of Transportation and Ann L. Schneider, in her official capacity as Secretary of the Illinois Department of Transportation, have offices and transact and conduct business in Cook County. Additionally, the transactions out of which Plaintiffs' causes of action arose occurred in Cook County, Illinois.

**ANSWER**: CMAP and MPO deny that 735 ILCS 5/2-101 and 2-103 govern venue as

this action was removed to federal court. CMAP and MPO admit that venue is proper in the

Northern District of Illinois, Eastern Division. CMAP and MPO deny the remaining allegations

in paragraph 15.

## APPLICABLE LAW

### The Illinois Regional Planning Act

16.     The Illinois Regional Planning Act, 705 ILCS 1707/1 *et seq*., sets forth
requirements for transportation planning in northeastern Illinois.

**ANSWER**:  CMAP and MPO admit that the Illinois Regional Planning Act addresses

development and transportation planning in northeastern Illinois, but deny Plaintiff's

characterization of the statute and deny the remaining allegations in paragraph 16.

17.     The Illinois Regional Planning Act created CMAP to serve as a consolidated
regional planning agency for northeastern Illinois. CMAP's stated purpose is "to plan for the;
most effective public and private investments in the northeastern Illinois region and to better
integrate plans for land use and transportation." 70 ILCS 1707/5.

**ANSWER**:  CMAP and MPO admit that the Regional Planning Act, 70 ILCS 1707/5,

states that the purpose of the Chicago Metropolitan Agency for Planning "is to effectively

address the development and transportation challenges in the northeastern Illinois region."

CMAP and MPO deny Plaintiff's characterization of the statute and deny the remaining

allegations in paragraph 17.

18.     The Illinois Regional Planning Act created the CMAP Board as the governing
body of CMAP. 70 ILCS 1707/15. The CMAP Board's voting members are representatives of
the City of Chicago and seven counties in the Chicago metropolitan area. *Id*.

**ANSWER**:  CMAP and MPO admit that 70 ILCS 1707/15 addresses the structure of the

Chicago Metropolitan Agency for Planning, including the make-up of the board.  CMAP and

MPO deny Plaintiff's characterization of the statute and deny the remaining allegations

contained in paragraph 18.

19.     The Illinois Regional Planning Act requires that all MPO planning documents for
northeastern Illinois be first approved by the CMAP Board as a necessary precondition for the
MPO Policy Committee to then consider them for approval.

**ANSWER**:  CMAP and MPO deny the allegations in paragraph 19.

20.     The Illinois Regional Planning Act specifically states: "The Board, in cooperation with local governments and transportation providers, shall develop a process for making the transportation decisions that require final MPO approval pursuant to federal law. That process shall comply with all applicable federal requirements. The adopted process shall ensure that all MPO plans, reports, and programs shall be approved by the CMAP Board prior to final approval by the MPO." 70 ILCS 1707/60(c) (emphasis added).

**ANSWER**:  CMAP and MPO admit that 70 ILCS 1707/60(c) contains the quoted text,

but deny that the text is underlined or emphasized as set forth in paragraph 20.

21.     The Illinois Regional Planning Act further states: "Each local government, transportation agency, and State agency shall cooperate with and assist the [CMAP] Board in carrying out its functions and shall provide to the [CMAP] Board all information requested by the Board."  70 ILCS 1707/51.

**ANSWER**:  CMAP and MPO admit that 70 ILCS 1707/51 contains the quoted language,

except the bracketed words, but denies the remaining allegations in paragraph 21.

22.     The Illinois Regional Planning Act recognizes the Defendant MPO Policy Committee as the designated metropolitan planning organization for the Chicago region. 70 ILCS 1707/60(a). The MPO Policy Committee's voting members are representatives from transportation agencies, including State of Illinois agencies and local governments.  At all times relevant to this Complaint, Defendant Ann L. Schneider, in her official capacity as Secretary of the Illinois Department of Transportation, served as the Chair of the MPO Policy Committee.

**ANSWER**:  CMAP and MPO admit the allegations in paragraph 22, except deny that

MPO's voting members are only representatives of transportation agencies.

**The Federal-Aid Highway Act**

23.     The Federal-Aid Highway Act ("FAHA"), 23 U.S.C. § 101 *et seq*., sets out requirements for state departments of transportation to receive federal financial assistance for highway projects.

**ANSWER**:  CMAP and MPO deny Plaintiffs' characterization of the Federal-Aid

Highway Act, and deny the remaining allegations in paragraph 23.

24.     The FAHA requires the designation of a "metropolitan planning organization" ("MPO") for every metropolitan area with a population of more than 50,000 individuals. 23 U.S.C. § 134(d)(1).

**ANSWER**:  CMAP and MPO deny Plaintiffs' characterization of 23 U.S.C. § 134(d)(1) and deny the remaining allegations in paragraph 24.

25.    An MPO must approve two documents that describe all of the transportation projects that are planned for its area: (1) the long-range Metropolitan Transportation Plan ("MTP") and (2) the shorter-term metropolitan Transportation Improvement Program ("TIP"). 23 U.S.C. § 134(i) and (j). The MTP must prioritize transportation projects needed over the next twenty years, and the TIP must provide more detailed financial information on projects to be completed during the next four years. *Id.*

**ANSWER**:  CMAP and MPO deny Plaintiffs' characterization of 23 U.S.C. § 134(i) and (j) and deny the remaining allegations in paragraph 25.

26.    In order for a specific transportation project to be eligible to receive federal financial assistance, the project must be included in both the MTP and TIP for the region. *See, e.g.*, 23 U.S.C. §134(j).

**ANSWER**:  CMAP and MPO deny Plaintiffs' characterization of 23 U.S.C. § 134(j) and deny the remaining allegations in paragraph 26.

27.    The Illinois Regional Planning Act and the FAHA thereby provide a three-step process for the approval of federal highway projects in northeastern Illinois:

(1)    The CMAP Board must first decide whether to approve a transportation plan or program "prior to final approval" by the MPO Policy Committee. 70 ILCS 1707/60(c).

(2)    If the CMAP Board votes to approve a transportation plan or program, only then may the MPO Policy Committee consider and decide whether to approve the plan or program. *Id.*

(3)    If the MPO Policy Committee approves the plan or program only then may IDOT proceed with the federal highway projects that have been specifically included therein. 23 U.S.C. § 134(j).

**ANSWER**:  CMAP and MPO deny the allegations in paragraph 27.

28.    The Public Private Agreements for the Illiana Expressway Act ("Illiana Expressway Act") was enacted in 2010 to authorize IDOT to develop the proposed Illiana Tollway and to seek federal financial assistance for the project, subject to "all applicable planning requirements otherwise required by law, including land use planning, regional planning, transportation planning, and environmental compliance requirements." 605 ILCS 130/55.

**ANSWER**:  CMAP and MPO admit that 605 ILCS 130/55 contains the quoted language, but deny Plaintiffs' characterization of the statute and deny the remaining allegations in paragraph 28.

## FACTS COMMON TO ALL COUNTS

### IDOT's Request to Amend CMAP's Metropolitan Transportation Plan and Transportation Improvement Plan to Include the Proposed Illiana Tollway

29.     The Illiana Tollway is a proposed new 47-mile long four-lane tollway that would run from Interstate 55 near Wilmington, Illinois in southwestern Will County to Interstate 65 near Lowell, Indiana.

**ANSWER**:  Denied except CMAP and MPO admit that the Illiana Corridor project ("Illiana Corridor") is a proposed 47-mile long four-lane tollway that would run from Interstate 55 near Wilmington, Illinois in southwestern Will County to Interstate 65 near Lowell, Indiana.

30.     IDOT stated that the overall construction cost of the Illiana Tollway would be at least $1.3 billion of which the State of Illinois would be responsible for $1 billion.

**ANSWER**:  Denied except CMAP and MPO admit that IDOT estimated the overall construction cost of the Illiana Corridor would be at least $1.3 billion.

31.     The Illiana Tollway is proposed to run along the southern border of the Midewin National Tallgrass Prairie, the nation's first such designated tallgrass prairie.

**ANSWER**:  Denied except CMAP and MPO admit that the Illiana Corridor would be located near the southern border of the Midewin National Tallgrass Prairie.

32.     The Illiana Tollway and its traffic would specifically adversely impact the Midewin National Tallgrass Prairie.

**ANSWER**:  CMAP and MPO admit that the CMAP staff's recommendation to CMAP and MPO advised that the Illiana Corridor, based on the factual information available to them, would adversely impact the Midewin National Tallgrass Prairie, but CMAP and MPO deny the remaining allegations in paragraph 32.

33.     In comments submitted during the environmental study process for the tollway, the United States Forest Service, which administers and oversees the Midewin National Tallgrass Prairie, stated that the tollway would "cause irreparable damage" to the National Tallgrass Prairie's habitat due to its close proximity.

**ANSWER**:  CMAP and MPO lack knowledge or information sufficient to form a belief

about the truth of the allegations in paragraph 33.

34.     The Illiana Tollway and its traffic would adversely impact natural resources regularly used and enjoyed by Plaintiffs' members.

**ANSWER**:  CMAP and MPO lack knowledge or information sufficient to form a belief

about the truth of the allegations in paragraph 34.

35.     CMAP's Metropolitan Transportation Plan ("MTP") for the Chicago region is often referred to as the GO TO 2040 Comprehensive Regional Plan ("GO TO 2040 Plan").

**ANSWER**:  Denied except CMAP and MPO admit that the GO TO 2040 Comprehensive

Regional Plan incorporates the Metropolitan Transportation Plan ("MTP").

36.     On April 8, 2013, Defendant IDOT formally requested that CMAP amend its MTP to include the proposed Illiana Tollway as a "fiscally constrained" capital project.

**ANSWER**:  Denied except CMAP and MPO admit that in a letter dated April 8, 2013,

IDOT formally requested that the MTP be amended to include the proposed Illiana Corridor as a

"fiscally constrained" capital project.

37.     On or before July 26, 2013, Defendant IDOT also requested that CMAP amend its Transportation Improvement Program ("TIP") to include an additional $81.5 million in State funding for the proposed Illiana Tollway through fiscal year 2015.

**ANSWER**:  Denied except CMAP and MPO admit that on or before July 26, 2013,

IDOT requested that the TIP be amended to include an additional $81.5 million in state funding

for the proposed Illiana Corridor through fiscal year 2015.

38.     By its requests, IDOT triggered the first step of the three-step process described above.

**ANSWER**:  CMAP and MPO deny the allegations contained in paragraph 38.

39.     Under the Illinois Regional Planning Act, the CMAP Board must first approve the proposed amendments to the MTP, often referred to as the GO TO 2040 Plan, and, also, approve the amended TIP "prior to final approval" by the MPO Policy Committee. 70 ILCS 1707/60(c).

**ANSWER**:  CMAP and MPO deny the allegations in paragraph 39.

### The CMAP Board Denied IDOT's Proposed Amendments

40.     The Illinois Regional Planning Act provides that programs and plans, including amendments to CMAP's MTP, often referred to as the GO TO 2040 Plan, and TIP must "be approved by the CMAP Board prior to final approval by the MPO [Policy Committee]." 70 ILCS 1707/60(c).

**ANSWER**:  CMAP and MPO deny Plaintiff's characterization of 70 ILCS 1707/60(c)

and deny the remaining allegations in paragraph 40.

41.     IDOT's requests to amend the MTP, often referred to as the GO TO 2040 Plan, and TIP to specifically include the proposed new Illiana Tollway were placed on the CMAP Board's agenda for its October 9, 2013 meeting.

**ANSWER**:  CMAP and MPO admit the allegations in paragraph 41.

42.     CMAP allowed a public comment period on IDOT's proposals. On September 3, 2013, Plaintiffs Openlands, Sierra Club and other civic organizations, submitted a comment letter that raised concerns over the proposed Illiana Tollway's high costs and limited transportation benefits.

**ANSWER**:  Denied except CMAP and MPO admit that CMAP allowed a public

comment period on the IDOT proposals and that in a letter dated September 3, 2013, certain

organizations, including Openlands and Sierra Club, Illinois Chapter, purported to raise various

concerns regarding the Illiana Corridor.

43.     In their September 3, 2013 comment letter. Plaintiffs also expressed concerns that building the tollway would divert State transportation funds from other regional needs.

**ANSWER**:  Denied except CMAP and MPO admit that in a letter dated September 3,

2013, certain organizations, including Openlands and Sierra Club, Illinois Chapter, purported to

raise various concerns regarding the Illiana Corridor.

44.     In their September 3, 2013 comment letter, Plaintiffs also identified negative impacts that the proposed Illiana Tollway and its traffic would have on the Midewin National

Tallgrass Prairie, the Kankakee River and other natural resources that are used and enjoyed by their members.

**ANSWER**: Denied except CMAP and MPO admit that in a letter dated September 3, 2013, certain organizations, including Openlands and Sierra Club, Illinois Chapter, purported to raise various concerns regarding the Illiana Corridor.

45. On September 27, 2013, CMAP's staff recommended that the CMAP Board and the MPO Policy Committee <u>not</u> approve amending the MTP, often referred to as the GO TO 2040 Plan, to include the proposed Illiana Tollway.

**ANSWER**: Denied except CMAP and MPO admit that CMAP staff recommended that the MTP not be amended to include the Illiana Corridor.

46. CMAP staff's September 27, 2013 recommendation document identified four specific issues "that should be of particular concern" to the CMAP Board and MPO Policy Committee in considering whether or not to approve IDOT's request: (1) the proposed Illiana Tollway's costs and financial risks; (2) IDOT's population growth assumptions that contradicted those in CMAP's MTP, often referred to as the GO TO 2040 Plan; (3) the proposed Illiana Tollway's unsubstantiated potential for economic development; and (4) the proposed Illiana Tollway's limited benefits for regional mobility.

**ANSWER**: CMAP and MPO admit that the allegations in paragraph 46 contain a portion of the CMAP's staff's recommendation document, but CMAP and MPO deny that the recommendation document was dated September 27, 2013 or that the allegations in paragraph 46 contain a complete recitation of the recommendation.

47. CMAP staff's September 27, 2013 recommendation document estimated that building the proposed Illiana Tollway would require a public subsidy from the State of Illinois of $400 million to $1.1 billion during the term of the agreement with the private contractor, even after taking into consideration potential toll revenues.

**ANSWER**: Denied except CMAP and MPO admit that the CMAP staff's analysis indicated a potential project gap (or required public subsidy) of between $440 million and $1.1 billion over the life of the facility across a range of private funding scenarios.

48. CMAP staff stated in its recommendation document that the proposed Illiana Tollway would have "negligible impacts on regional transportation performance" because it would be located well south of the Chicago metropolitan area's major congested areas.

**ANSWER**:  Denied except CMAP and MPO admit that the CMAP staff's analysis determined the Illiana Corridor achieves negligible impacts on regional transportation performance in part because major congested areas are well to the north of the proposed Illiana Corridor.

49.     On October 9, 2013, the CMAP Board voted 10 to 4 against a motion that the MTP, often referred to as the GO TO 2040 Plan, be amended to include the proposed Illiana Tollway. *See* CMAP Board Minutes of October 9, 2013 Meeting at 5, attached as Exhibit A.

**ANSWER**:  CMAP and MPO admit that a motion at CMAP's October 9, 2013 board meeting to amend the GO TO 2040 Plan to include the Illiana Corridor project, with a vote of 4-10 and 1 absent, was not approved.  CMAP and MPO deny the remaining allegations in paragraph 49.

50.     Because the CMAP Board voted 10 to 4 against the motion that the MTP, often referred to as the GO TO 2040 Plan, be amended to include the Illiana Tollway, the CMAP Board did not provide its "approv[al]" under the Illinois Regional Planning Act. 70 ILCS 1707/60(c). *See* Exhibit A at 5.

**ANSWER**:  CMAP and MPO admit that CMAP did not vote in favor of approving amending the GO TO 2040 plan to include the Illiana Corridor, but deny the remaining allegations in paragraph 50.

51.     On October 9, 2013, the CMAP Board also voted unanimously to approve some proposed amendments to CMAP's TIP, but excluded IDOT's proposed amendment of the TIP that would have also included an additional $81.5 million of State funding to support the proposed Illiana Tollway through fiscal year 2015. *See* Exhibit A at 6.

**ANSWER**:  CMAP and MPO admit that at the October 9, 2013 board meeting, CMAP voted to approve the GO TO 2040/TIP conformity analysis and TIP amendments that would exclude the Illiana Corridor.  CMAP and MPO deny the remaining allegations in paragraph 51.

52.     Because the CMAP Board voted against the motion that the TIP be amended to include the proposed Illiana Tollway, the CMAP Board did not provide its "approv[al]" under the Illinois Regional Planning Act. 70 ILCS 1707/60(c). *See* Exhibit A at 6.

**ANSWER**:  CMAP and MPO admit that CMAP did not vote in favor of approving amending the GO TO 2040 plan to include the Illiana Corridor, but deny the remaining allegations in paragraph 52.

53.     The CMAP Board thus did not provide its prior approval of IDOT's proposed amendments of the MTP, often referred to as the GO TO 2040 Plan, and the TIP as required under the Illinois Regional Planning Act for those amendments and the proposed Illiana Tollway to proceed to the MPO Policy Committee for consideration and final approval. 70 ILCS 1707/60(c).

**ANSWER**:  CMAP and MPO admit that CMAP did not vote in favor of approving amending the GO TO 2040 plan to include the Illiana Corridor, but deny the remaining allegations in paragraph 53.

54.     The proposed Illiana Tollway had not passed "Step 1" of the regional transportation planning process, and the MPO Policy Committee accordingly lacked legal authority to take any further action on the proposed Illiana Tollway.

**ANSWER**:  CMAP and MPO deny the allegations in paragraph 54.

**The MPO Policy Committee Purports to Approve IDOT's Proposed Amendments**

55.     The MPO Policy Committee exists as a body within CMAP.

**ANSWER**:  CMAP and MPO deny the allegations in paragraph 55.

56.     The MPO Policy Committee conducts its business at CMAP's offices.

**ANSWER**:  CMAP and MPO admit the allegations in paragraph 56.

57.     The MPO Policy Committee relies on CMAP's staff for policy and administrative support.

**ANSWER**:  CMAP and MPO admit that MPO receives support from CMAP staff and that MPO retains all policy and decision-making authority.  CMAP and MPO deny the remaining allegations in paragraph 57.

58.     The CMAP staff's support for the MPO Policy Committee includes technical analyses.

**ANSWER**:  CMAP and MPO admit that CMAP staff conducts technical analyses under direction supervision of MPO, but deny the remaining allegations in paragraph 58.

59.     The CMAP staff's support for the MPO Policy Committee includes preparation of agendas and minutes.

**ANSWER**:  CMAP and MPO admit that CMAP staff prepares agendas and minutes under the direction and supervision of MPO, but deny the remaining allegations in paragraph 59.

60.     Funding for the MPO Policy Committee's activities is included within the larger CMAP budget.

**ANSWER**:  CMAP and MPO admit that funding for the MPO is included as part of the CMAP budget, but deny the remaining allegations in paragraph 60.

61.     After the CMAP Board's October 9, 2013 votes to not approve the proposed Illiana Tollway, IDOT continued to request that the MPO Policy Committee vote on IDOT's proposed amendments of the MTP, often referred to as the GO TO 2040 Plan, and the TIP.

**ANSWER**:  Denied except CMAP and MPO admit that in a letter from the Secretary of IDOT dated April 8, 2013, IDOT requested that MPO vote to amend the MTP and TIP to include the Illiana Corridor at the October 2013 MPO meeting.

62.     Despite the CMAP Board's October 9, 2013 votes to not approve the Illiana Tollway, the MPO Policy Committee scheduled a meeting to conduct its own vote on IDOT's proposed amendments.

**ANSWER**:  Denied except CMAP and MPO admit the MPO had a previously-scheduled meeting to consider the proposed Illiana Corridor.

63.     On October 16, 2013, the Plaintiffs' attorneys sent a letter to the CMAP Board and MPO Policy Committee. See Exhibit B. The letter explained their legal view that, under Section 60(c) of the Regional Planning Act, the MPO Policy Committee was not authorized to "finally approve" the proposed amendment of the MTP, often referred to as the GO TO 2040 Plan, to include the proposed Illiana Tollway because the CMAP Board had rejected the amendment. 70 ILCS 1707/60(c).

**ANSWER**:  CMAP and MPO admit the allegations in paragraph 63, except they deny

that Plaintiffs' legal view is correct and deny that MPO was not authorized to finally approve the

proposed amendment to the GO TO 2040 Plan to include the Illiana Tollway.

64.     Defendant Ann L. Schneider, in her official capacity as the Secretary of the
Illinois Department of Transportation, served as the Chair of the MPO Policy Committee during
its October 17, 2013 meeting.

**ANSWER**:  CMAP and MPO admit the allegations in paragraph 64.

65.     On October 17, 2013, the MPO Policy Committee voted 11 to 8 in favor of
amending the MTP, often referred to as the GO TO 2040 Plan, to include the proposed Illiana
Tollway. *See* Exhibit C at 9.

**ANSWER**:  Denied except CMAP and MPO admit that on October 17, 2013, MPO voted

11 to 8 in favor of amending the MTP to include the Illiana Corridor.

66.     On October 17, 2013, the MPO Policy Committee also voted 11 to 8 in favor of
amending the TIP to include an additional $81.5 million of State funding for the proposed Illiana
Tollway through fiscal year 2015. *See* Exhibit C at 9.

**ANSWER**:  CMAP and MPO admit that on October 17, 2013, MPO voted 11 to 8 in

favor of amending the GO TO 2040/TIP Conformity Determination and TIP Amendment, but

deny the remaining allegations in paragraph 66.

67.     At the MPO Policy Committee's October 17, 2013 meeting, Defendant Ann L.
Schneider, Secretary of the Illinois Department of Transportation, cast votes in favor of
amending the MTP, often referred to as the GO TO 2040 Plan, and the TIP to include the
proposed Illiana Tollway.

**ANSWER**:  Denied except CMAP and MPO admit that at the October 17, 2013 MPO

meeting, Defendant Ann L. Schneider, Secretary of the Illinois Department of Transportation,

voted in favor of amending the MTP and TIP to include the Illiana Corridor.

68.     On October 24, 2013, CMAP's Executive Director responded to the Plaintiffs'
attorneys' October 16, 2013 letter. *See* Exhibit D.

**ANSWER**:  CMAP and MPO admit the allegations in paragraph 68.

69.     In his October 24, 2013 letter, CMAP's Executive Director stated that "federal law vesting the [MPO] Policy Committee with authority to approve transportation plans trumps state law." *See* Exhibit D at 1.

**ANSWER**:  CMAP and MPO admit that the October 24, 2013 letter contains the quoted

language, except the bracketed word, but deny the remaining allegations in paragraph 69.

70.     In the October 24, 2013 letter, CMAP's Executive Director further asserted that "the final action of the Policy Committee to approve the Illiana amendment is binding." *See* Exhibit D at 1.

**ANSWER**:  CMAP and MPO admit that the October 24, 2013 letter contains the quoted

language, but deny the remaining allegations in paragraph 70.

71.     CMAP's position that federal law "trumps" the Illinois Regional Planning Act expresses a legal position that Section 60(c) of the Act is unconstitutional. 70 ILCS 1707/60(c).

**ANSWER**:  CMAP and MPO deny the allegations in paragraph 71.

72.     CMAP is a municipal corporation created under the Illinois Regional Planning Act and has only the powers granted by Illinois law. Ill. Const. 1970, art. VII, sec. 8.

**ANSWER**:  CMAP and MPO admits the allegations in paragraph 72, but clarifies that

the Illinois Regional Planning Act, 70 ILCS 1707/15(a) states that "The Chicago Metropolitan

Agency for Planning is established as a political subdivision, body politic, and municipal

corporation."

73.     On information and belief, CMAP has not requested an advisory opinion from the Illinois Attorney General regarding the constitutionality of Section 60(c) of the Illinois Regional Planning Act.

**ANSWER**:  CMAP and MPO admit the allegations in paragraph 73.

74.     On information and belief, the MPO Policy Committee has not requested an advisory opinion from the Illinois Attorney General regarding the constitutionality of Section 60(c) of the Illinois Regional Planning Act.

**ANSWER**:  CMAP and MPO admit the allegations in paragraph 74.

75.     On information and belief, IDOT has not requested an advisory opinion from the Illinois Attorney General regarding the constitutionality of Section 60(c) of the Illinois Regional Planning Act.

**ANSWER**:  CMAP and MPO lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 75.

### IDOT's Expenditures of Public Funds and Planned Expenditures

76.     IDOT has disbursed at least $40 million of Illinois state funds to study the proposed Illiana Tollway.

**ANSWER**:  CMAP and MPO admit the allegations in paragraph 76.

77.     IDOT proposes to spend up to $500 million of public funds on the proposed Illiana Tollway through 2019, with additional contributions required thereafter.

**ANSWER**:  CMAP and MPO lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 77.

78.     IDOT has been developing the proposed Illiana Tollway as a project intended to receive federal financial support.

**ANSWER**:  CMAP and MPO lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 78.

79.     IDOT is requesting a loan from the Federal Highway Administration to support developing the proposed Illiana Tollway.

**ANSWER**:  CMAP and MPO lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 79.

80.     On March 17, 2014, IDOT announced that the Federal Highway Administration had determined that the proposed Illiana Tollway is eligible to apply for a federal loan.

**ANSWER**:  CMAP and MPO lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 80.

81.     IDOT is requesting that private contractors consider participating in a "public-private partnership" agreement to construct the proposed Illiana Tollway.

**ANSWER**:  CMAP and MPO admit the allegations in paragraph 81.

82.     IDOT advised CMAP that, under the proposed "public-private partnership" agreement, the State of Illinois would be required to pay between $250 million and $300 million during the years 2015 through 2017 for land acquisition, utility relocations, and engineering for

the tollway, and up to $200 million during the years 2018 and 2019 in "milestone payments" to the private contractor.

**ANSWER**: Denied except CMAP and MPO admit that the September 27, 2013 Fiscal Constraint Demonstration states IDOT estimated that $250 million to $300 million in Illinois state funds would be required to be invested during the construction of the Illiana Corridor Project (assumed to be 2015 to 2017) for land acquisition, utility relocations, and engineering, and that IDOT may also invest up to $200 million in milestone payments in 2018 and 2019.

83.     IDOT stated that the State of Illinois would agree to pay the selected private contractor guaranteed annual payments from 2018 to 2053 in exchange for the contractor building the tollway and keeping it open for use by traffic.

**ANSWER**: CMAP and MPO lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 83.

### IDOT Continues to Develop the Illiana Tollway

84.     Since the MPO Policy Committee's October 17, 2013  meeting, IDOT has publicly maintained that the MPO Policy Committee's vote was legally effective in amending the MTP, often referred to as the GO TO 2040 Plan, and the TIP to include the proposed Illiana Tollway.

**ANSWER**: CMAP and MPO lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 84.

85.     Public Act 98-0050 appropriates public funds to IDOT for the fiscal year ending June 30, 2014.

**ANSWER**: CMAP and MPO admit the allegations in paragraph 85.

86.     Public Act 98-0050 includes two appropriations designated for costs associated with the proposed Illiana Tollway (0596 and 0011-49442-7900-0213).

**ANSWER**: CMAP and MPO lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 86.

87.     One of the appropriations designated for costs associated with the proposed Illiana Tollway is from the Illiana Expressway Proceeds Fund.

**ANSWER**:  CMAP and MPO lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 87.

88.      One of the appropriations designated for costs associated with the proposed Illiana Tollway is from the Road Fund.

**ANSWER**:  CMAP and MPO lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 88.

89.      Public Act 98-0050 also includes several appropriations designated for costs associated with IDOT's "Road Improvement Program." These include appropriations from the State Construction Account Fund, Road Fund, Transportation Bond Series A Fund, and Transportation Bond Series D Fund.

**ANSWER**:  CMAP and MPO lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 89.

90.      IDOT has included project engineering and land acquisition activities for the proposed Illiana Tollway for the fiscal year ending June 30, 2014, and subsequent years, in its "Highway Improvement Program" based on the TIP amendment which was the subject of the MPO Policy Committee's October 17, 2013 vote.

**ANSWER**:  CMAP and MPO admit the allegations in paragraph 90.

91.      Since the MPO Policy Committee's October 17, 2013 meeting, IDOT has continued to carry out activities to develop the proposed Illiana Tollway as a federally assisted tollway.

**ANSWER**:  CMAP and MPO lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 91.

92.      IDOT's activities for the proposed Illiana Tollway include: (1) carrying out an ongoing "public-private  partnership" procurement process; (2) seeking federal financial assistance for the proposed Illiana Tollway from the Federal Highway Administration; and (3) completing an ongoing environmental impact study process required under the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq*.

**ANSWER**:  CMAP and MPO lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 92.

93.      IDOT intends to begin acquiring land to build the Illiana Tollway as soon as June 2014.

**ANSWER**:  CMAP and MPO lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 93.

94.     Defendant Ann L. Schneider will incur substantial expenses in her official capacity as Secretary of the Illinois Department of Transportation in continuing to develop the proposed Illiana Tollway.

**ANSWER**:  CMAP and MPO lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 94.

## COUNT I

### Declaratory Judgment (735 ILCS 5/2-701) and Injunctive Relief

95.     Plaintiff realleges Paragraphs 1 through 94.

**ANSWER**:  CMAP and MPO restate their answers to paragraphs 1–94 as if fully stated herein.

96.     The CMAP Board is required under the Illinois Regional Planning Act to "develop a process" for making regional transportation decisions that "shall ensure that all MPO plans, reports, and programs shall be approved by the CMAP Board prior to final approval by the MPO [Policy Committee]." 70 ILCS 1707/60(c).

**ANSWER**:  CMAP and MPO admit that 70 ILCS 1707/60(c) states the following:

> The Board, in cooperation with local governments and transportation providers, shall develop and adopt a process for making the transportation decisions that require final MPO approval pursuant to federal law. That process shall comply with all applicable federal requirements. The adopted process shall ensure that all MPO plans, reports, and programs shall be approved by the CMAP Board prior to final approval by the MPO.

CMAP and MPO deny the remaining allegations in paragraph 96.

97.     The CMAP Board has not approved IDOT's proposed amendments of the MTP, often referred to as the GO TO 2040 Plan, and the TIP to include the proposed Illiana Tollway as a "fiscally constrained" capital project.

**ANSWER**:  Denied except CMAP and MPO admit that CMAP voted 10 to 4 against a motion to amend the GO TO 2040 Plan to include the Illiana Corridor.

98.     The CMAP Board violated Section 60(c) of the Illinois Regional Planning Act by not adopting a regional transportation decision-making process that ensures that all MPO plans, reports, and programs were approved by the CMAP Board prior to final approval by the MPO Policy Committee. 70 ILCS 1707/60(c).

**ANSWER**:  CMAP and MPO deny the allegations in paragraph 98.

99.     Accordingly, the MPO Policy Committee had no authority to consider or approve IDOT's proposed amendments of the MTP, often referred to as the GO TO 2040 Plan, and the TIP to include the proposed Illiana Tollway as a "fiscally constrained" capital project.

**ANSWER**:  CMAP and MPO deny the allegations in paragraph 99.

100.     The MPO Policy Committee's October 17, 2013 vote to amend the MTP, often referred to as the GO TO 2040 Plan, and the TIP to include the proposed Illiana Tollway as a "fiscally constrained" capital project violated Section 60(c) of the Illinois Regional Planning Act and were not authorized under Section 60(c) of the Illinois Regional Planning Act. 70 ILCS 1707/60(c).

**ANSWER**:  CMAP and MPO deny the allegations in paragraph 100.

101.     The MPO Policy Committee lacked legal authority to amend the MTP, often referred to as the GO TO 2040 Plan, and the TIP to include the proposed Illiana Tollway.

**ANSWER**:  CMAP and MPO deny the allegations in paragraph 101.

102.     IDOT's continued development of the proposed Illiana Tollway is not authorized under the Illiana Expressway Act, 605 ILCS 130/55, because the project has not complied with all applicable planning requirements, including but not limited to Section 60 of the Illinois Regional Planning Act.

**ANSWER**:  CMAP and MPO deny the allegations in paragraph 102.

103.     IDOT's actions requesting that the MPO Policy Committee approve the proposed Illiana Tollway after the CMAP Board failed to approve and voted to reject IDOT's proposed amendments of the MTP, often referred to as the GO TO 2040 Plan, and the TIP, and in continuing to develop the proposed Illiana Tollway, have violated and continue to violate IDOT's duty under Section 51 of the Illinois Regional Planning Act, 70 ILCS 1707/51, to "cooperate with and assist" the CMAP Board in carrying out its functions.

**ANSWER**:  CMAP and MPO deny the allegations in paragraph 103.

104.     Unless the Defendants' failures to comply with the requirements of the Illinois Regional Planning Act are declared unlawful, Plaintiffs and other taxpayers will suffer irreparable harm due to IDOT's illegal disbursement of public funds, described in Paragraphs 76 through 94.

**ANSWER**: CMAP and MPO deny the allegations in paragraph 104.

105.　　Unless the Defendants' failures to comply with the requirements of the Illinois Regional Planning Act are declared unlawful, Plaintiffs and other taxpayers will suffer irreparable harm to their use and enjoyment of the natural resources that would be adversely impacted by the proposed Illiana Tollway.

**ANSWER**: CMAP and MPO deny the allegations in paragraph 105.

106.　　Defendant CMAP Board's position that federal law "trumps" Section 60(c) of the Illinois Regional Planning Act is not supported by law. CMAP is a municipal corporation created under the Illinois Regional Planning Act and has only the powers granted by Illinois law. Ill. Const. 1970, art. VII, sec. 8. IDOT, the CMAP Board and the MPO Policy Committee lack authority to decide on their own that an Illinois state statute is unconstitutional and should not be followed.

**ANSWER**: Denied except CMAP and MPO admit that CMAP is a municipal

corporation created under the Illinois Regional Planning Act and that it only has the powers

granted by Illinois law.

107.　　The CMAP Board's position that federal law "trumps" the Illinois Regional Planning Act also is not supported by law because the Illinois Regional Planning Act is not inconsistent with federal law. The Illinois Regional Planning Act's requirement that the MPO Policy Committee shall provide "final approval" to all MPO documents, 70 ILCS 1707/60(c), is consistent with the requirements of the FAHA, 23 U.S.C. § 101 *et seq.* and other federal statutes.

**ANSWER**: CMAP and MPO deny the allegations in paragraph 107.

108.　　Plaintiffs have no adequate remedy at law. Plaintiffs' requested relief will redress the injuries to their members, and, unless this Court grants the requested relief, the Defendants' actions will cause irreparable harm to the Plaintiffs' and their members' interests, including the members' and the public's interests in: (a) the proper expenditure and disbursement of public funds, (b) their use and enjoyment of natural resources and areas that would be adversely impacted by the proposed Illiana Tollway, (c) effective regional transportation planning, and (d) the lawful administration of State statutes.

**ANSWER**: CMAP and MPO deny the allegations in paragraph 108.

## COUNT II

### Statutory and Common-Law Taxpayer Action (735 ILCS 5/11-301 *et seq.*)

109.　　Plaintiffs reallege Paragraphs 1 through 94.

**ANSWER**: CMAP and MPO restate their answers to paragraphs 1–94 as if fully stated herein.

110.    IDOT's continued development of the proposed Illiana Tollway is not authorized under the Illiana Expressway Act, 605 ILCS 130/55, because the IDOT and the proposed project have not fulfilled and complied with all applicable planning requirements, including but not limited to Section 60 of the Illinois Regional Planning Act.

**ANSWER**:  CMAP and MPO deny the allegations in paragraph 110.

111.    IDOT's actions requesting that the MPO Policy Committee approve the proposed Illiana Tollway after the CMAP Board denied approval and voted to reject IDOT's proposed amendments of the MTP, often referred to as the GO TO 2040 Plan, and the TIP, and IDOT's continuing actions to develop the proposed Illiana Tollway have violated and continue to violate IDOT's duty under Section 51 of the Illinois Regional Planning Act, 70 ILCS 1707/51, to "cooperate with and assist" the CMAP Board in carrying out its functions.

**ANSWER**: CMAP and MPO deny the allegations in paragraph 111.

112.    Unless the Defendants' failures to fulfill and comply with the requirements of the Illinois Regional Planning Act are declared unlawful, Plaintiffs and other taxpayers will suffer irreparable harm resulting from IDOT's illegal expenditures and disbursements of public funds, described in Paragraphs 76 through 94.

**ANSWER**:  CMAP and MPO deny the allegations in paragraph 112.

113.    Plaintiffs have no adequate remedy at law. Plaintiffs' requested relief will redress the injuries to their members, and, unless this Court grants the requested relief, the Defendants' actions will cause irreparable harm to the Plaintiffs' and their members' interests, including the members' and the public's interests in: (a) the proper expenditure and disbursement of public funds, (b) their use and enjoyment of natural resources and areas that would be adversely impacted by the proposed Illiana Tollway, (c) effective regional transportation planning, and (d) the lawful administration of State statutes.

**ANSWER**:  CMAP and MPO deny the allegations in paragraph 113.

**WHEREFORE**, Defendants Board of the Chicago Metropolitan Agency for Planning and MPO Policy Committee respectfully request that the Court enter judgment in their favor and against Plaintiffs, and grant such further relief as the Court deems just and equitable.

## AFFIRMATIVE DEFENSES

Defendants, Board of the Chicago Metropolitan Agency for Planning ("CMAP") and MPO Policy Committee ("MPO), for their affirmative defenses, state as follows:

### First Affirmative Defense

Plaintiffs lack standing for their claims.

**WHEREFORE**, Defendants Board of the Chicago Metropolitan Agency for Planning and MPO Policy Committee respectfully request that the Court enter judgment in their favor and against Plaintiffs, and grant such further relief as the Court deems just and equitable.

Respectfully submitted,

**BOARD OF THE CHICAGO
METROPOLITAN AGENCY FOR PLANNING
and MPO POLICY COMMITTEE**

By: s/ Chelsea Ashbrook McCarthy
      One of their attorneys

Christopher J. Murdoch
Chelsea Ashbrook McCarthy
Holland & Knight LLP
131 S. Dearborn St., 30th Fl.
Chicago, IL  60603
(312) 263-3600
chris.murdoch@hklaw.com
chelsea.mccarthy@hklaw.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on **June 4, 2014**, the foregoing **Defendants Board of the Chicago Metropolitan Agency for Planning and MPO Policy Committee's Answer and Affirmative Defenses to Amended Complaint** was served via CM/ECF upon the following counsel of record:

*Counsel for Openlands and Sierra Club*
Andrew Barrett Armstrong
aarmstrong@elpc.org

*Counsel for IDOT and Ann L. Schneider*
Michael A. Forti
Michael.forti@illinois.gov

<u>s/ Chelsea Ashbrook McCarthy</u>